**Rosemarie LENZ, Appellant,**

v.

**Rudi LENZ, Appellee.**

**No. 04–99–00492–CV.**

Court of Appeals of Texas, San Antonio.

Aug. 31, 2000.

Rehearing Overruled Feb. 1, 2001.

Richard R. Orsinger, San Antonio, for Appellant.

Jo Chris Lopez, Shaddox, Compere, Walraven & Goode, P.C., San Antonio, for Appellee.

Sitting: ALMA L. LÓPEZ, Justice CATHERINE STONE, Justice PAUL W. GREEN, Justice.

## OPINION

CATHERINE STONE, Justice.

This is a post-divorce "relocation case" in which Rosemarie ("Romy") Lenz sought modification of her divorce decree so that she may move with her two minor children to Germany. Her ex-husband, Rudi Lenz, sought to restrict the children's residence to Bexar County, Texas. Romy obtained a favorable jury verdict, but the trial court entered judgment notwithstanding the verdict and imposed a Bexar County residency restriction. Romy now appeals from the order modifying the terms of the conservatorship order.

### FACTUAL AND PROCEDURAL BACKGROUND

Romy and Rudi, German citizens, married in Germany in 1980. In 1991, they moved to Phoenix, Arizona with their then four-year son, Oliver. Dominic, their second son, was born the following year. In 1997, the parties legally separated under Arizona law and entered into a Stipulated Consent Decree of Legal Separation. Among other provisions, this decree included a Joint Custody Agreement and Parenting Plan addressing custody and support for Oliver and Dominic. In general, the agreement provided that Romy and Rudi would be joint legal custodians, with Romy being the "primary residential parent" (equivalent to primary custodial parent in Texas) and with whom the children would reside subject to Rudi having physical access to them. The parties' regular visitation schedule provided that Rudi had custody of the children every other weekend and two nights per week. This agreement also acknowledged the parties' intent to both relocate to San Antonio and restrict residency of the children to Texas. With respect to the residency restriction, the agreement provided that:

> Neither parent shall permanently remove the Children from the State of Texas, without written consent of the other parent and/or a court order and without first attempting to rework the Parenting Plan through the use of a private mediator mutually agreed upon by the parties.

As planned, the parties moved to San Antonio in 1997. In 1998, Romy initiated divorce proceedings and the parties divorced in August of that year. The divorce decree, signed and entered on August 14, 1998, incorporated by reference the Arizona Joint Custody Agreement and Parenting Plan. Thus, per the decree, Romy had the exclusive right to determine the children's residency, although that right was not unfettered. She was required to live with the children in Texas where Rudi could have physical access to them.

The following month, Romy filed a motion to modify in which she sought removal of the Texas residency restriction from the conservatorship order. This action was based upon Romy's desire to return with the children to Germany where she intends to remarry. In response, Rudi argued against modification, and alternatively, he sought to be named the primary residential joint managing conservator.

The modification issue was tried to a jury. The issue of attorney's fees and court costs was submitted to the trial

court. At the trial's conclusion, the jury was charged with two questions: (1) whether the requirements for a modification had been proven; and (2) if so, which parent should have the exclusive right to determine the county of residence and the primary residence of the children. Finding evidence to support a modification, the jury answered the first question affirmatively. In response to question two, which was conditioned upon question one, the jury determined that Romy should have the exclusive, unfettered right to determine the children's residency.

Thereafter, Rudi filed a motion for judgment n.o.v. in which he asked the court to disregard the jury's verdict because, among other things, Romy had failed to *meet any of the statutory requirements* [for modification under section 156 of the Family Code.]" Alternatively, Rudi argued that the jury's answer to question two was only advisory under section 105.002(c)(2)(B) of the Family Code,[1] and thus the trial court could properly disregard it. Rudi also asked the court to issue further orders regarding the geographical restrictions in the original divorce decree. In support of his post-verdict request, Rudi claimed that the trial court had the "inherent power and authority to enter orders in the best interest of the children Oliver and Dominic Lenz. [Rudi Lenz] by way of this motion, invokes the authority and power of this Court to issue orders specifying a fixed geographical area in which the children may be moved to."

The trial court entered a final order, which did not modify the original conserva-

torship order by deleting the Texas residency restriction—the express relief Romy sought and the relief to which the jury believed she was entitled. Rather, the trial court's order modified the conservatorship order to the extent it imposed yet a further limitation on Romy's exclusive right to determine the children's residency. Specifically, the trial court modified the original order to read as follows:

> IT IS ORDERED that ROSEMARIE LENZ and RUDI LENZ shall continue as joint managing conservators. IT IS ORDERED that ROSEMARIE LENZ is appointed the joint managing conservator, with the right to establish the primary residence of the children within Bexar County, Texas. IT IS FURTHER ORDERED, as a condition of possession to the joint managing conservatorship, that the children shall reside in and attend schools in Bexar County, Texas. This order in no way restricts the rights of Rosemarie Lenz to change her own address and domicile. If Rosemarie Lenz decides to move, this court shall entertain the requests to modify the periods of possession. This order references the mother's testimony of her desired plan to move.

The trial court entered findings of facts and conclusions of law in support of its order. Among other things, the trial court found that: (1) both children are well adjusted and successful in the school in which they are enrolled; (2) both children are involved in extracurricular activities; and (3) the children have established

---

1. Section 105.002 of the Family Code provides, in pertinent part:
   (c) In a jury trial:
     (1) a party is entitled to a verdict by the jury on the issues of:
       * * * *
       (D) the determination of the primary residence of the child;

   (2) a party is not entitled to a jury verdict on the issues of:
       * * * *
     (B) a specific term or condition of possession of or access to the child.

meaningful and significant friendships with their classmates and neighbors in the community where they reside in Bexar County. Based on the evidence before it, the trial court concluded that: (1) it is in the best interest of the children that Romy and Rudi continue as joint managing conservators; (2) it is in the best interest of the children that Romy have the right to determine the domicile of the children within Bexar County; (3) it is in the best interest of the children that they continue to reside in, and attend school in, Bexar County; and (4) it is in the best interest of the children that neither parent remove the children from Bexar County with the intent of changing their residence or domicile without a court order or written agreement.

## ARGUMENTS ON APPEAL

On appeal, Romy attacks the trial court's order in seven points of error. With the exception of two issues related to attorney's fees and costs, Romy's basic complaint focuses on the trial court's imposition of the additional residency restriction, arguing that it violates unidentified "federal law," the United States and Texas Constitutions, and certain provisions of the Family Code. Romy does not approach the case as if the trial court disregarded the jury's answer to question one in which the jury found that the grounds for modification had been established. Rather, Romy contends the trial court erroneously disregarded jury question two by imposing the additional residency restriction. This approach is premised on Romy's position that "no evidence" arguments were not advanced in Rudi's motion for judgment n.o.v., and as such, according to Romy, the trial court's order must be based upon the trial court's interpretation of section 105.002 of the Family Code. Romy therefore focuses her energies analyzing the propriety of the trial court's action in relation to section 105.002 of the Family Code.

Based upon our review of the motion for judgment n.o.v. and the trial court's findings and conclusions, it is apparent that (1) the request for judgment n.o.v. did present a "no evidence" challenge to the jury's verdict, and (2) the court disregarded the jury's answer to question one on the basis that Romy failed to establish the best interest prong of section 156.202(2) as a matter of law. Stated differently, the trial court found no evidence to support the jury's finding that removal of the Texas residency restriction was in the children's best interest. Question two, conditioned upon question one, necessarily fell with the trial court's nullification of question one. With that in mind, we believe this case presents two primary issues for our review: (1) whether the trial court properly disregarded the jury's answer to question one, thereby necessarily negating the jury's answer to question two; and (2) whether the trial court, after concluding that the evidence did not support deletion of the Texas residency restriction in the original order, had the authority to modify the order to further restrict the children's residency to Bexar County, Texas.

## STANDARD OF REVIEW

■ A judgment notwithstanding the verdict is properly entered when a legal principle precludes recovery, or when there is no evidence upon which a jury could base its findings. *John Masek Corp. v. Davis,* 848 S.W.2d 170, 173 (Tex.App.—Houston [1st Dist.] 1992, writ denied). When reviewing a no evidence point, we review only the evidence tending to support the jury's verdict and disregard all evidence to the contrary. *Sherman v. First Nat'l Bank,* 760 S.W.2d 240, 242 (Tex.1988). If more than a scintilla of evidence supports the jury finding, it must

be upheld. *Garcia v. Insurance Co. of Pa.*, 751 S.W.2d 857, 858 (Tex.1988). In other words, if any evidence of probative force supports a contested issue, the judgment n.o.v. was improperly granted. *See Leitch v. Hornsby*, 935 S.W.2d 114, 118 (Tex.1996). Affirmance of the trial court's judgment is proper if it is supported by any ground asserted in the motion for judgment notwithstanding the verdict. *Cf. Kelly v. Diocese of Corpus Christi*, 832 S.W.2d 88, 90 (Tex.App.—Corpus Christi 1992, writ dism'd w.o.j.) (reviewing directed verdict); *Prather v. McNally*, 757 S.W.2d 124, 126 (Tex.App.—Dallas 1988, no writ) (reviewing directed verdict).

We review the trial court's action of imposing the additional residency restriction under an abuse of discretion standard. *See Jenkins v. Jenkins*, 16 S.W.3d 473, 479–80 (Tex.App.—El Paso 2000, no pet.).

## MODIFICATION UNDER SECTION 156.202

In Texas, modification of the terms and conditions of a joint managing conservatorship is proper if:

(1)(A) the circumstances of the child or one or both of the joint managing conservators have materially and substantially changed since the rendition of the order; or

(B) the order has become unworkable or inappropriate under existing circumstances; and

(2) a modification of the terms and conditions of the order would be a positive improvement for and in the best interest of the child.

TEX. FAM.CODE ANN. § 156.202 (Vernon 1996). In the instant case, Romy sought modification on the basis that the Texas residency restriction had become unworkable or inappropriate in light of her desire to return to Germany. As movant, she also assumed the burden of establishing that relocation to Germany would be a positive improvement for and in the best interest of the children. Because the trial court's order implicitly rests upon a finding of no evidence to support a finding of best interest under subsection (2), and because after oral submission Rudi specifically limited his argument to support that finding, we need not address the material and substantial change element or the unworkable circumstance element under subsection (1)(B). Our review is thus limited to addressing the best interest element.

## BEST INTEREST OF THE CHILD

The Family Code does not define or otherwise set out the relevant factors to be considered when determining whether a requested change is in the best interest of a child. In other contexts involving a "best interest" analysis, Texas courts have applied what are commonly referred to as the *Holley* factors—a non-exhaustive list of considerations for determining a minor's best interest. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex.1976) (enumerating list of factors to ascertain best interest of child in parental termination context); *see also In re Jane Doe 2*, 19 S.W.3d 278, 282 (Tex.2000) (applying *Holley* factors for best interest determination in judicial bypass provision of Parental Notification Act); *In re Marriage of Bertram*, 981 S.W.2d 820, 822–23 (Tex.App.-Texarkana 1998, no pet.) (applying *Holley* factors for best interest determination in conservatorship proceeding). Among the factors to be considered are: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the plans for the child by the party seeking the change; and (5) the stability of the home or proposed placement. *See Holley*, 544 S.W.2d at 371–72. In the instant case, testimony was elicited on each of these elements.

However, because the appropriate standard of review limits our examination of the record to the evidence and inferences that support the jury's finding, while ignoring all other evidence to the contrary, see *Navarette v. Temple Indep. Sch. Dist.*, 706 S.W.2d 308, 309 (Tex.1986), we discuss only that evidence which arguably supports modification of the Texas residency restriction, and ultimately, relocation for the boys.

### Needs of the Children

■ The boys speak German in Romy's house and receive formal German language lessons. Romy reads to the boys in German, they watch German movies, and they celebrate German holidays according to German traditions. Dr. Frank Paredes, a psychologist hired by Romy, testified that it is important for the boys to maintain and benefit from their German culture. Notably, it was not suggested by any witness that the boys had to live in Germany in order to foster their cultural identity.

### Plans for the Children and Proposed Home Setting

Romy intends to return with the boys to the area or town where she was raised and where her family still lives. No formal decisions regarding the boys' education have been made, although Romy has looked into bilingual schools for the boys. At the time of trial Romy had not secured housing in Germany, and planned to live with her parents until her furniture and belongings arrived. Initially, Romy would not work outside the home so that she could focus on raising the boys. Romy testified that she is financially able to both purchase a home and remain at home for the short term.

### Romy's emotional needs

Romy desires to return to Germany because she is engaged to a German resident whom she intends to marry and live with in Germany. She never intended to live in the United States permanently, and she is lonely. When asked about the impact, if any, upon Romy's mental health if she was not allowed to remove the boys from the United States, Dr. Paredes indicated that Romy's adjustment would be difficult. Romy's difficulties, according to Dr. Paredes, "would not be of any assistance whatsoever [to] the boys." Dr. Paredes did not testify that Romy's mental health should be a basis for the boys' relocation to Germany. That is, Dr. Paredes did not suggest that Romy, if she chose to stay in Texas with the boys, would be impaired in her parenting skills by her loneliness or depression.

The evidence thus suggests that relocation could have its benefits. It would place the boys in closer proximity to their extended families where they would be immersed in their cultural heritage. In Germany they could receive comparable schooling, they could enjoy the same extracurricular activities that they now enjoy in the United States, and presumably their mother would be better adjusted and happier.

Although the evidence may suggest that the boys' living situation in Germany would be similar to or equal with their current situation, this does not satisfy Romy's statutory burden of establishing that relocation would be in the boys' best interest and a positive improvement. At best the evidence suggests that modification to allow a move to Germany could be a positive improvement for Romy, but not for the boys. While the trial court stated that its order did not restrict Romy's freedom to "change her address and domicile," the obvious practical impact of the order is that Romy must remain in Texas where she is unhappy if she wants to maintain custody of her boys. Romy is offered the

chance of a fresh start in Germany where she is more comfortable; but under Texas law with the "best interest of the child" as the standard, Romy cannot undertake that fresh start with her children. She must choose between her interests and the best interest of her boys. Unfortunately, in this case the interests of the parties are at odds. The Family Code specifies that the best interest of the children must prevail, *see* TEX. FAM.CODE ANN. § 156.202(2) (Vernon 1996), and in this case, there is no evidence that the best interest of the boys would be served by moving them to Germany. After our review of the record, we are persuaded that Romy failed to carry her burden of establishing that relocation to Germany would be in the best interest of the boys. Accordingly, the trial court properly granted Rudi's motion for judgment n.o.v. on this basis.[2]

### TRIAL COURT'S AUTHORITY TO IMPOSE ADDITIONAL RESIDENCY RESTRICTION

■ Having found that the trial court properly disregarded the jury's answers regarding modification, we turn then to the second issue presented for our review: whether the trial court, after concluding that the Texas residency restriction should remain in place, had the authority to further restrict the children's residency to Bexar County. Rudi contends that the additional restriction is authorized by section 153.134 of the Family Code, which in part provides that any order entered by the trial court establishing joint managing conservatorship must: (1) designate the conservator who has the exclusive right to determine the primary residence; and (2) designate a geographic area consisting of

the county or contiguous counties where the child is to reside; or (3) specify that there is no geographic location. *See* TEX. FAM.CODE ANN. § 153.134(b)(1)(A), (B) (Vernon Supp.2000). Rudi contends that because the Family Code does not specify how the trial court shall assign or implement such a geographic restriction, the trial court retains broad discretion in crafting a restriction that is responsive to and effectuates the best interest of the child. *See Jenkins*, 16 S.W.3d at 479–80. Finding no authority to the contrary, we agree with Rudi's proposed application of section 154.134 in the instant case. *See generally In re Macalik*, 13 S.W.3d 43, 45 (Tex.App.-Texarkana 1999, no pet.) (holding that courts, in context of modification proceeding involving matters of custody and control, have discretion to make dispositions of all matters if supported by evidence).

Here, the trial court had before it undisputed evidence that both boys want to remain in Bexar County, a place they consider home and where they have established relationships with peers and teachers. Lynn Plumb, a neighbor and co-worker of Rudi's, testified that the boys are usually seen in the company of other neighborhood children playing basketball, football, or rollerblading. In Plumb's opinion, Rudi's home tends to be the house where neighborhood children congregate. Plumb has also observed that the boys have a close, loving relationship with their father. That sentiment was echoed by Dr. Joanne Murphey, a clinical psychologist appointed by the court to assess whether relocation was in the boys' best interest. Dr. Murphey testified that both boys have a strong relationship with their father.

---

**2.** In light of our determination that the trial court properly granted judgment n.o.v., we reject Romy's claim that the court's action improperly applied section 105.002(c)(2)(B) of the Family Code (trial court determines specific term or condition or possession of or access to child) to undermine section 105.002(c)(1)(D) (party entitled to jury verdict on issue of determination of child's primary residence).

She characterized Dominic, the younger child, as "exceedingly needing of father at this period of time." Dr. Murphey indicated that a move away from their father would be detrimental to the boys during this time in their development. In light of such evidence, we cannot conclude that the trial court abused its discretion in determining that the boys should live in and attend school in Bexar County where they would maintain daily contact with their father and their desired peer groups.[3] *See id.*

In two remaining points of error, Romy complains about the trial court's failure to award her attorney's fees and court costs. These contentions are predicated on the assumption that the trial court erred in both disregarding the jury's answers and imposing a further geographic limitation in the conservatorship order. Due to our holdings on both primary issues, we find that the trial court did not abuse its discretion in failing to award Romy attorney's fees and court costs. *See* TEX. FAM.CODE ANN. § 106.002 (Vernon Supp.2000) (allows for award of attorney's fees in suit affecting parent-child relationship).

### CONCLUSION

Based upon the issues presented to the jury, we hold that the trial court properly disregarded the jury's affirmative answer regarding modification. We further hold that based upon the evidence before the trial court, it properly exercised its discretion in imposing a further geographical

limitation in the conservatorship order. Accordingly, the order of the trial court is affirmed.

---

3. We find no merit to Romy's claim that the trial court's action infringes on her U.S. Constitutional right to travel. This right embraces three different components: the right to enter and leave another State; the right to be treated as a welcome visitor while temporarily present in another State; and, for those travelers who elect to become permanent residents, the right to be treated like other citizens of that State. *Saenz v. Roe,* 526 U.S. 489, 490, 119 S.Ct. 1518, 143 L.Ed.2d 689

(1999). Because the trial court's order in no way affects Romy's ability to return to Germany, the trial court's order does not interfere with: (1) her right to enter and leave another State; (2) her right to be treated as a welcome visitor in another State; or (3) her right to be treated like any other citizen of Texas who voluntarily subjects herself to the jurisdiction of the court system by filing a divorce proceeding. Accordingly, we reject this argument.