**Cindy ROUCH, Appellant,**

v.

**CONTINENTAL AIRLINES, INC., Appellee.**

No. 04–00–00280–CV.

Court of Appeals of Texas, San Antonio.

Nov. 7, 2001.

A.J. Hohman, Jr., John G. Gehring, Hohman, Georges and Gehring, L.L.P., James N. Higdon, Higdon, Hardy & Zuflacht, L.L.P., San Antonio, for Appellant.

George P. Parker, Jr., Stan Pietrusiak, Bracewell & Patterson, L.L.P., San Antonio, for Appellee.

Sitting: ALMA L. LÓPEZ, Justice, CATHERINE STONE, Justice and KAREN ANGELINI, Justice.

### OPINION

KAREN ANGELINI, Justice.

This appeal arises out of Cindy Rouch's wrongful termination and defamation action against Continental Airlines, Inc. The

jury entered a verdict in Rouch's favor on her defamation claim. The trial court, however, granted Continental's motion for judgment notwithstanding the verdict on the ground that Rouch consented to the defamatory statements. Rouch appeals. We affirm the trial court's judgment.

### FACTUAL & PROCEDURAL HISTORY

Cindy Rouch worked for Continental Airlines as an airport sales agent. During her employment with Continental, Joe Delpero was Continental's senior official in San Antonio. Rouch had excellent customer skills, a good attendance record, knew her job well, and received complimentary letters from customers. However, Rouch was reprimanded on several occasions.

In 1996, Continental paid to have Rouch commissioned as a notary public. Rouch signed a memorandum, which stated "[O]ur policy is that while on duty at Continental, you are not to charge a fee to anyone, including other airline customers." On May 28, 1997, another airport sales agent observed Rouch notarizing documents for customers and collecting a fee for her services. That employee reported the violation to another employee, who notified Delpero of Rouch's notary policy violation. Delpero discussed the accusations with Rouch and she admitted she had collected fees for her notary services. Delpero terminated Rouch's employment. The termination letter to Rouch states in part:

> Your collection of these fees while on duty violates the original understanding of the responsibilities you volunteered for. Having considered your prior employment history as a whole, I feel there is no choice but to terminate your employment with Continental Airlines effective immediately.

Rouch appealed her termination through Continental's internal appeal procedure. At the Step 1 hearing, Delpero relied on documents from Rouch's personnel file. As grounds for Rouch's termination, Delpero cited her misuse of pass privileges and company property, time sheet alterations, clocking in and then parking her car before reporting to work, and collecting notary fees. Delpero further relied on written statements from Continental employees. In one such statement, a co-employee alleged that Rouch attempted to bribe her to keep quiet about the notary issue. In another statement, a co-employee described Rouch as vindictive. Delpero further alleged that Rouch engaged in an inappropriate relationship with a supervisor and Rouch was untrustworthy as a supervisor. Rouch lost her appeal.

At the Step 2 hearing, Delpero used the above information and additional statements he obtained from various Continental employees regarding Rouch's employment. Some of the events described in the statements occurred after the Step 1 hearing. In one statement, a co-employee charged that Rouch verbally abused her and was concerned that Rouch would take retaliatory measures against her. Other statements characterize her as vindictive and intimidating. Delpero also used a letter from the Airport Police Chief, notifying Continental that other Continental employees were concerned that Rouch would damage their vehicles. Again, Rouch's termination was upheld.

Rouch brought suit against Continental, alleging it libeled and slandered her during the internal appeal hearings.[1] Rouch also

---

1. In her pleadings, Rouch alleged Delpero made the following defamatory statements: The defamatory statements, both orally and in writing, included false allegations that

Plaintiff was a thief, was dishonest, had attempted bribery of a company employee, lacked integrity, could not be trusted as a supervisor, that she was not a "team play-

claimed Continental wrongfully discharged her. The jury found in Continental's favor on the wrongful discharge claim, but found in favor of Rouch on the slander claim, awarding her $848,250 in compensatory damages and $1,000,000 in exemplary damages. Continental moved for judgment notwithstanding the verdict on the grounds of consent, privilege, and no evidence of certain elements of defamation. In the alternative, Continental moved for judgment n.o.v. requesting the trial court to reduce the exemplary damages award. The trial court entered a final judgment, disregarding a portion of the jury's compensatory damages award and reducing exemplary damages. Continental moved for reconsideration of its motion for judgment n.o.v. This time, the trial court granted its motion on the grounds that Rouch consented to the defamatory statements. The trial court entered a take-nothing judgment, and Rouch appeals in three issues. Continental brings several issues on cross appeal.

JUDGMENT NOTWITHSTANDING THE VERDICT

A. *Standard of Review*

■ A trial court may disregard a jury's finding and grant a motion for judgment n.o.v. when there is no evidence upon which the jury could have based its findings. *See* TEX.R. CIV. P. 301; *Mancorp, Inc. v. Culpepper,* 802 S.W.2d 226, 227 (Tex.1990); *Lenz v. Lenz,* 40 S.W.3d 111, 114 (Tex.App.—San Antonio 2001, pet. filed). We review the entry of a judgment n.o.v. under the legal sufficiency standard. *See Texas Animal Health Comm'n v. Garza,* 27 S.W.3d 54, 62 (Tex.App.—San

Antonio 2000, pet. denied); *County of Real v. Sutton,* 6 S.W.3d 11, 13–14 (Tex.App.—San Antonio 1999, pet. denied). Even if a plaintiff is able to prove all the allegations in its pleading, if a legal principle, such as consent, bars recovery, the court should grant a motion for judgment n.o.v. *Lenz,* 40 S.W.3d at 114; *Purina Mills, Inc. v. Odell,* 948 S.W.2d 927, 932 (Tex.App.—Texarkana 1997, writ denied).

B. *Consent*

■ A defendant may defeat liability for defamation by showing that the plaintiff consented to the allegedly defamatory communication. Here, the trial court granted Continental's motion for judgment n.o.v. on the ground "that there is no evidence to support the Jury's finding in response to Question No. 4 (regarding consent), and the evidence conclusively establishes that Plaintiff consented to the allegedly slanderous statements."

"The consent of another to the publication of defamatory matters concerning him is a complete defense to his action for defamation." RESTATEMENT (SECOND) OF TORTS § 583 (1976). A party who submits his or her conduct to investigation, knowing the results of the investigation will be published, consents to that publication. *Id.* § 583 cmt. d.

This court dealt with the issue of consent to defamatory statements in *Sedona Contracting Inc. v. Ford, Powell & Carson, Inc.,* 995 S.W.2d 192 (Tex.App.—San Antonio 1999, pet. denied). In that case, Sedona bid on a school district construction project. *Id.* at 195. Although it submitted the lowest bid, its bid was rejected.

er" and had hurt station morale, that she used her friendship with airport police and a company employee to show power over others and had an inappropriate relationship with the company employee, that she had keyed cars and slashed tires, had not

complied with corporate guidelines as to hair and dress, that it was necessary to increase security at the airport because employees feared her, that she was a dangerous person, mean and vindictive, mentally unstable and not fit for duty.

*Id.* According to an architectural firm which served as an agent to the school district, Sedona was not qualified for the project. *Id.* Sedona brought suit against the architectural firm, alleging it defamed Sedona in the bidding process. At trial, both parties moved for summary judgment; the architectural firm's motion was granted. *Id.*

On appeal, this court held that "Sedona's bid constituted consent to the bidding process and the possibility of negative assessment.... By submitting its bid form, Sedona acknowledged that it understood the bidding process and terms, and thereby consented to the process." *Id.* at 198.

One case from outside of this jurisdiction deals with circumstances similar to those here. *See Ernst v. Indiana Bell Tel. Co.*, 475 N.E.2d 351 (Ind.Ct.App.1985). In *Ernst*, Bell terminated Ernst's employment. *Ernst*, 475 N.E.2d at 352. Ernst was a union member. *Id.* Ernst filed two grievances under the collective bargaining agreement, challenging Bell's actions. *Id.* Several grievance meetings were held wherein Ernst's termination was upheld. *Id.* Ernst filed suit against Bell, alleging his supervisor willfully defamed him at the grievance proceedings by making untrue statements concerning his job performance and honesty. *Id.* The trial court granted summary judgment in Bell's favor on the grounds that "Ernst consented to Bell's publication and such consent bars recovery." *Id.* at 355. On appeal, the court held that:

> By filing grievances under his labor contract ..., Ernst submitted his conduct to investigation, and he consented to the company's publication of its viewpoint in the matter. One who agrees to submit his conduct to investigation knowing that its results will be published consents to that publication.

*Id.* (citing Prosser, *Handbook on the Law of Torts,* Sec. 114 (4th Ed.1971)).

Rouch, as an employee of Continental Airlines, challenged her termination and requested reinstatement through Continental's Appeal Procedure. In doing so, Rouch submitted her conduct to investigation and review and consented to the results of the investigation being published at the hearing. *See Sedona,* 995 S.W.2d at 198; *Ernst,* 475 N.E.2d at 355; RESTATEMENT (SECOND) OF TORTS § 583 cmt. d, illus. 3 (1976).

■ Rouch argues that because the termination letter listed only her violation of the notary policy, she consented only to the defamatory statements regarding that incident. Essentially, Rouch is arguing that if the "consent" principle applies, this court must measure the breadth of her consent to determine whether she consented to all comments made during the appeal hearings. The extent of consent is measured by its terms. RESTATEMENT (SECOND) OF TORTS § 583 cmt. d (1976). The terms must be determined "by the language or acts by which it is manifested in the light of the surrounding circumstances." *Id.*

We note, as an initial matter, that Rouch's reading of her termination letter is much too narrow. In addition to citing her violation of the notary policy, the letter also cited her "previous work history" as grounds for her termination. She, therefore, knew that any past problems during her employment with Continental could be at issue at the hearings.

In making her complaint that she consented only to the notary issue, Rouch relies on *Frank B. Hall & Co., Inc. v. Buck,* 678 S.W.2d 612 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.). In that case, Buck went to work for Hall & Company. *Id.* at 616. However, after almost a year of working there, Buck was, unex-

pectedly, fired. *Id.* at 617. Buck testified that the reasons he was given for his termination were untenable. *Id.* at 618. Specifically, he stated he was told he was being terminated because he had not fulfilled his commitment and it would be economically unsound for Hall & Company to retain him because he had not generated a sufficient amount of business. *Id.*

After Buck's efforts to obtain employment were fruitless, he hired an investigator to ascertain the reasons for his termination from Hall & Company. *Id.* at 618. The investigator contacted Buck's former employers at Hall & Company. He told them he was an investigator and that Buck was being considered for another position and that he was seeking information about Buck's employment with Hall. *Id.* at 617. In addition to other disparaging comments, Buck's former employers remarked that Buck was untrustworthy, not always entirely truthful, disruptive, paranoid, hostile and guilty of padding his expense account. *Id.* Hall's former office manager went so far as to call Buck a "classical sociopath," "a zero" and "'a Jeckyll and Hyde person' who was 'lacking in . . . scruples.'" *Id.* at 617.

Buck sued Hall for defamation and won. On appeal, Hall argued that "Buck could and should have expected Hall's employees to give their opinion of Buck when requested to do so." *Id.* Although the court agreed with Hall's assertion, it held that although "Buck could assume that Hall's employees would give their opinion when asked to do so" nothing in the record "indicate[d] that Buck knew Hall's employees would defame him when [the investigator] made the inquiries." *Id.*

*Buck* is factually distinct from the case before us. In that case, by hiring the investigator, Buck was inquiring into the reasons for his discharge, but not seeking any form of relief from Hall & Company.

The evidence suggests that Buck expected his former employers to make comments about his performance while employed with Hall & Company, not defamatory remarks about his character. *Id.* at 618. In this case, however, Rouch invoked Continental's appeal procedure to review her termination, which, by its nature, is an adversarial proceeding. She also sought reinstatement. Although Continental did not have *carte blanche* to falsely accuse Rouch of any alleged actions or behavior, anything arguably relevant to either her termination or her possible reinstatement is "fair game." All the records contained in Rouch's personnel file are relevant to her termination. The statements from other Continental employees that Delpero used at the hearing are relevant to Rouch's request to be reinstated. Statements that she was vindictive and intimidating to other employees, for instance, show that reinstating Rouch may disrupt and interfere with Continental's working environment. *Cf. Southwestern Bell Mobile Sys., Inc. v. Franco,* 971 S.W.2d 52, 55 (Tex.1998)(considering evidence that the employee might be disruptive in finding that the trial court did not abuse its discretion by ordering the employee's reinstatement); *Brown v. Univ. of Tx. Health Ctr. at Tyler,* 957 S.W.2d 911, 917 (Tex.App.— Tyler 1997, no pet.). We note that although some of the events discussed at the second hearings occurred after the Step 1 hearing, those events are relevant to Rouch's co-employees' perception of her and, thus, are relevant to her reinstatement.

Rouch was on notice that her entire employment history, as well as anything relevant to her possible reinstatement, may be an issue at the hearings. Rouch should have expected that unfavorable statements regarding subjects beyond only the notary incident would be made about

her at the hearings. Continental did not go beyond the terms of Rouch's consent in making the statements at the hearings.

## CONCLUSION

Because we find that Rouch consented to any defamatory statements made during the hearings, we hold the trial court did not err in granting the judgment n.o.v. We, therefore, need not reach Rouch's remaining issues or Continental's cross issues. The trial court's judgment is affirmed.