No. 04-00-00280-CV



Cindy ROUCH,


Appellant



v.



CONTINENTAL AIRLINES, INC.,


Appellee



From the 285th Judicial District Court, Bexar County, Texas


Trial Court No. 98-CI-08373


Honorable Michael Peden, Judge Presiding



Opinion by: Karen Angelini, Justice


Sitting: Alma L. López, Justice

 Catherine Stone, Justice

 Karen Angelini, Justice


Delivered and Filed: November 7, 2001


AFFIRMED

 This appeal arises out of Cindy Rouch's wrongful termination and defamation action against
Continental Airlines, Inc. The jury entered a verdict in Rouch's favor on her defamation claim. The
trial court, however, granted Continental's motion for judgment notwithstanding the verdict on the
ground that Rouch consented to the defamatory statements. Rouch appeals. We affirm the trial
court's judgment. 

Factual & Procedural History

 Cindy Rouch worked for Continental Airlines as an airport sales agent. During her
employment with Continental, Joe Delpero was Continental's senior official in San Antonio. Rouch
had excellent customer skills, a good attendance record, knew her job well, and received
complimentary letters from customers. However, Rouch was reprimanded on several occasions.

 In 1996, Continental paid to have Rouch commissioned as a notary public. Rouch signed a
memorandum, which stated "[O]ur policy is that while on duty at Continental, you are not to charge
a fee to anyone, including other airline customers." On May 28, 1997, another airport sales agent
observed Rouch notarizing documents for customers and collecting a fee for her services. That
employee reported the violation to another employee, who notified Delpero of Rouch's notary policy
violation. Delpero discussed the accusations with Rouch and she admitted she had collected fees for
her notary services. Delpero terminated Rouch's employment. The termination letter to Rouch states
in part:

 Your collection of these fees while on duty violates the original
understanding of the responsibilities you volunteered for. Having
considered your prior employment history as a whole, I feel there is
no choice but to terminate your employment with Continental
Airlines effective immediately.


 Rouch appealed her termination through Continental's internal appeal procedure. At the Step
1 hearing, Delpero relied on documents from Rouch's personnel file. As grounds for Rouch's
termination, Delpero cited her misuse of pass privileges and company property, time sheet
alterations, clocking in and then parking her car before reporting to work, and collecting notary fees.
Delpero further relied on written statements from Continental employees. In one such statement, a
co-employee alleged that Rouch attempted to bribe her to keep quiet about the notary issue. In
another statement, a co-employee described Rouch as vindictive. Delpero further alleged that Rouch
engaged in an inappropriate relationship with a supervisor and Rouch was untrustworthy as a
supervisor. Rouch lost her appeal.

 At the Step 2 hearing, Delpero used the above information and additional statements he
obtained from various Continental employees regarding Rouch's employment. Some of the events
described in the statements occurred after the Step 1 hearing. In one statement, a co-employee
charged that Rouch verbally abused her and was concerned that Rouch would take retaliatory
measures against her. Other statements characterize her as vindictive and intimidating. Delpero also
used a letter from the Airport Police Chief, notifying Continental that other Continental employees
were concerned that Rouch would damage their vehicles. Again, Rouch's termination was upheld. 

 Rouch brought suit against Continental, alleging it libeled and slandered her during the
internal appeal hearings. (1) Rouch also claimed Continental wrongfully discharged her. The jury found
in Continental's favor on the wrongful discharge claim, but found in favor of Rouch on the slander
claim, awarding her $848,250 in compensatory damages and $1,000,000 in exemplary damages.
Continental moved for judgment notwithstanding the verdict on the grounds of consent, privilege,
and no evidence of certain elements of defamation. In the alternative, Continental moved for
judgment n.o.v. requesting the trial court to reduce the exemplary damages award. The trial court
entered a final judgment, disregarding a portion of the jury's compensatory damages award and
reducing exemplary damages. Continental moved for reconsideration of its motion for judgment
n.o.v. This time, the trial court granted its motion on the grounds that Rouch consented to the
defamatory statements. The trial court entered a take-nothing judgment, and Rouch appeals in three
issues. Continental brings several issues on cross appeal.

Judgment Notwithstanding the Verdict

A. Standard of Review 

 A trial court may disregard a jury's finding and grant a motion for judgment n.o.v. when there
is no evidence upon which the jury could have based its findings. See Tex. R. Civ. P. 301; Mancorp,
Inc. v. Culpepper, 802 S.W.2d 226, 227 (Tex.1990); Lenz v. Lenz, 40 S.W.3d 111, 114 (Tex.
App.-San Antonio 2001, pet. filed). We review the entry of a judgment n.o.v. under the legal
sufficiency standard. See Texas Animal Health Comm'n v. Garza, 27 S.W.3d 54, 62 (Tex. App.-San
Antonio 2000, pet. denied); County of Real v. Sutton, 6 S.W.3d 11, 13-14 (Tex. App.-San Antonio
1999, pet. denied). Even if a plaintiff is able to prove all the allegations in its pleading, if a legal
principle, such as consent, bars recovery, the court should grant a motion for judgment n.o.v. Lenz,
40 S.W.3d at 114; Purina Mills, Inc. v. Odell, 948 S.W.2d 927, 932 (Tex. App.-Texarkana 1997,
writ denied).



 Consent


 A defendant may defeat liability for defamation by showing that the plaintiff consented to
the allegedly defamatory communication. Here, the trial court granted Continental's motion for
judgment n.o.v. on the ground "that there is no evidence to support the Jury's finding in response
to Question No. 4 (regarding consent), and the evidence conclusively establishes that Plaintiff
consented to the allegedly slanderous statements." 

 "The consent of another to the publication of defamatory matters concerning him is a
complete defense to his action for defamation." Restatement (Second) of Torts § 583 (1976).
A party who submits his or her conduct to investigation, knowing the results of the investigation will
be published, consents to that publication. Id. § 583 cmt. d.

 This court dealt with the issue of consent to defamatory statements in Sedona Contracting
Inc. v. Ford, Powell & Carson, Inc., 995 S.W.2d 192 (Tex. App.-San Antonio 1999, pet. denied).
In that case, Sedona bid on a school district construction project. Id. at 195. Although it submitted
the lowest bid, its bid was rejected. Id. According to an architectural firm which served as an agent
to the school district, Sedona was not qualified for the project. Id. Sedona brought suit against the
architectural firm, alleging it defamed Sedona in the bidding process. At trial, both parties moved
for summary judgment; the architectural firm's motion was granted. Id.

 On appeal, this court held that "Sedona's bid constituted consent to the bidding process and
the possibility of negative assessment.... By submitting its bid form, Sedona acknowledged that it
understood the bidding process and terms, and thereby consented to the process." Id. at 198.

 One case from outside of this jurisdiction deals with circumstances similar to those here. See
Ernst v. Indiana Bell Tel. Co., 475 N.E.2d 351 (Ind. Ct. App. 1985). In Ernst, Bell terminated Ernst's
employment. Ernst, 475 N.E.2d at 352. Ernst was a union member. Id. Ernst filed two grievances
under the collective bargaining agreement, challenging Bell's actions. Id. Several grievance meetings
were held wherein Ernst's termination was upheld. Id. Ernst filed suit against Bell, alleging his
supervisor willfully defamed him at the grievance proceedings by making untrue statements
concerning his job performance and honesty. Id. The trial court granted summary judgment in Bell's
favor on the grounds that "Ernst consented to Bell's publication and such consent bars recovery."
Id. at 355. On appeal, the court held that:

 By filing grievances under his labor contract . . ., Ernst submitted his
conduct to investigation, and he consented to the company's
publication of its viewpoint in the matter. One who agrees to submit
his conduct to investigation knowing that its results will be published
consents to that publication.

Id. (citing Prosser, Handbook on the Law of Torts, Sec. 114 (4th Ed. 1971)). 

 Rouch, as an employee of Continental Airlines, challenged her termination and requested
reinstatement through Continental's Appeal Procedure. In doing so, Rouch submitted her conduct
to investigation and review and consented to the results of the investigation being published at the
hearing. See Sedona, 995 S.W.2d at 198; Ernst, 475 N.E.2d at 355; Restatement (Second) of
Torts § 583 cmt. d, illus. 3 (1976).

 Rouch argues that because the termination letter listed only her violation of the notary policy,
she consented only to the defamatory statements regarding that incident. Essentially, Rouch is
arguing that if the "consent" principle applies, this court must measure the breadth of her consent
to determine whether she consented to all comments made during the appeal hearings. The extent
of consent is measured by its terms. Restatement (Second) of Torts § 583 cmt. d (1976). The
terms must be determined "by the language or acts by which it is manifested in the light of the
surrounding circumstances." Id. 

 We note, as an initial matter, that Rouch's reading of her termination letter is much too
narrow. In addition to citing her violation of the notary policy, the letter also cited her "previous
work history" as grounds for her termination. She, therefore, knew that any past problems during her
employment with Continental could be at issue at the hearings. 

 In making her complaint that she consented only to the notary issue, Rouch relies on Frank
B. Hall & Co., Inc. v. Buck, 678 S.W.2d 612 (Tex. App.-Houston [14th Dist.] 1984, writ ref'd
n.r.e.). In that case, Buck went to work for Hall & Company. Id. at 616. However, after almost a year
of working there, Buck was, unexpectedly, fired. Id. at 617. Buck testified that the reasons he was
given for his termination were untenable. Id. at 618. Specifically, he stated he was told he was being
terminated because he had not fulfilled his commitment and it would be economically unsound for
Hall & Company to retain him because he had not generated a sufficient amount of business. Id. 

 After Buck's efforts to obtain employment were fruitless, he hired an investigator to ascertain
the reasons for his termination from Hall & Company. Id. at 618. The investigator contacted Buck's
former employers at Hall & Company. He told them he was an investigator and that Buck was being
considered for another position and that he was seeking information about Buck's employment with
Hall. Id. at 617. In addition to other disparaging comments, Buck's former employers remarked that
Buck was untrustworthy, not always entirely truthful, disruptive, paranoid, hostile and guilty of
padding his expense account. Id. Hall's former office manager went so far as to call Buck a "classical
sociopath," "a zero" and "'a Jeckyll and Hyde person' who was 'lacking in . . . scruples.'" Id. at 617. 

 Buck sued Hall for defamation and won. On appeal, Hall argued that "Buck could and should
have expected Hall's employees to give their opinion of Buck when requested to do so." Id.
Although the court agreed with Hall's assertion, it held that although "Buck could assume that Hall's
employees would give their opinion when asked to do so" nothing in the record "indicate[d] that
Buck knew Hall's employees would defame him when [the investigator] made the inquiries." Id.

 Buck is factually distinct from the case before us. In that case, by hiring the investigator, Buck
was inquiring into the reasons for his discharge, but not seeking any form of relief from Hall &
Company. The evidence suggests that Buck expected his former employers to make comments about
his performance while employed with Hall & Company, not defamatory remarks about his character.
Id. at 618. In this case, however, Rouch invoked Continental's appeal procedure to review her
termination, which, by its nature, is an adversarial proceeding. She also sought reinstatement.
Although Continental did not have carte blanche to falsely accuse Rouch of any alleged actions or
behavior, anything arguably relevant to either her termination or her possible reinstatement is "fair
game." All the records contained in Rouch's personnel file are relevant to her termination. The
statements from other Continental employees that Delpero used at the hearing are relevant to
Rouch's request to be reinstated. Statements that she was vindictive and intimidating to other
employees, for instance, show that reinstating Rouch may disrupt and interfere with Continental's
working environment. Cf. Southwestern Bell Mobile Sys., Inc. v. Franco, 971 S.W.2d 52, 55 (Tex.
1998)(considering evidence that the employee might be disruptive in finding that the trial court did
not abuse its discretion by ordering the employee's reinstatement); Brown v. Univ. of Tx. Health Ctr.
at Tyler, 957 S.W.2d 911, 917 (Tex. App.-Tyler 1997, no pet.). We note that although some of the
events discussed at the second hearings occurred after the Step 1 hearing, those events are relevant
to Rouch's co-employees' perception of her and, thus, are relevant to her reinstatement. 

 Rouch was on notice that her entire employment history, as well as anything relevant to her
possible reinstatement, may be an issue at the hearings. Rouch should have expected that unfavorable
statements regarding subjects beyond only the notary incident would be made about her at the
hearings. Continental did not go beyond the terms of Rouch's consent in making the statements at
the hearings. 

Conclusion

 Because we find that Rouch consented to any defamatory statements made during the
hearings, we hold the trial court did not err in granting the judgment n.o.v. We, therefore, need not
reach Rouch's remaining issues or Continental's cross issues. The trial court's judgment is affirmed.


 Karen Angelini, Justice

PUBLISH
1. In her pleadings, Rouch alleged Delpero made the following defamatory statements: 


 The defamatory statements, both orally and in writing, included false allegations
that Plaintiff was a thief, was dishonest, had attempted bribery of a company
employee, lacked integrity, could not be trusted as a supervisor, that she was not a
"team player" and had hurt station morale, that she used her friendship with airport
police and a company employee to show power over others and had an
inappropriate relationship with the company employee, that she had keyed cars and
slashed tires, had not complied with corporate guidelines as to hair and dress, that
it was necessary to increase security at the airport because employees feared her,
that she was a dangerous person, mean and vindictive, mentally unstable and not fit
for duty.