**Affirmed in Part, Reversed and Rendered in Part, and Remanded in Part and Memorandum Opinion filed December 15, 2016.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-15-00828-CV

---

### RICHARD FORD AND JAMIE FORD, Appellants

### V.

### CANDICE BLAND D/B/A THE DIAMOND MINE AND ROBERT BUCHANAN, Appellees

---

**On Appeal from the 412th District Court**
**Brazoria County, Texas**
**Trial Court Cause No. 80547-CV**

---

## M E M O R A N D U M   O P I N I O N

This appeal arises from the trial court's order denying a motion to dismiss filed pursuant to the Texas Citizens Participation Act ("TCPA"[1]). Tex. Civ. Prac.

---

[1] The TCPA is commonly referred to as an "anti-SLAPP" law – "SLAPP" is an acronym for "Strategic Lawsuits Against Public Participation."

& Rem. Code Ann. §§ 27.001–.011 (West 2015). We affirm in part, reverse and render in part, and remand in part.

## I. BACKGROUND

In March of 2014, Richard Ford took the wedding ring of his wife, Jamie, to the Diamond Mine for refurbishment, including replacement of the center stone. When the work was complete, Jamie picked up the ring and paid the outstanding balance. Subsequently, in June 2014, the Fords complained to the owner of the Diamond Mine, Candice Bland, and her husband, Robert Buchanan, that the center stone in the ring was not the diamond Richard had selected. Richard then went to the Pearland Police Department to file a complaint. In February 2015, Richard filed an online complaint with the Better Business Bureau ("BBB").

That same month, the Fords ("appellants") filed suit against Bland, doing business as the Diamond Mine, and Buchanan ("appellees") for violation of the Texas Deceptive Trade Practices Act ("DTPA") and common-law fraud. Appellees counterclaimed alleging slander, libel, and business disparagement. The business disparagement counterclaim concerned statements by appellants in the store and to the BBB, while the defamation counterclaim also concerned statements to police. Appellants moved to dismiss appellees' counterclaims under the TCPA. Appellees then amended their counterclaim to eliminate the business disparagement claim. Following a hearing, the trial court denied appellants' motion to dismiss.[2] From that order, appellants bring this appeal.

---

[2] Although the trial court's order does not indicate the reason for its ruling, a letter directing the party to mediate issued the same day states "I believe [appellees] have established by clear and specific evidence a prima facie case on each essential element needed to be established."

2

## II.    IS THE TCPA APPLICABLE?

To dismiss a claim under the TCPA, the movant must first show by a preponderance of the evidence that the claim is based on, relates to, or is in response to the movant's exercise of the right of free speech, the right to petition, or the right of association. Tex. Civ. Prac. & Rem. Code § 27.005(b). We review de novo whether the challenged legal action is covered under the TCPA. *Deaver v. Desai*, 483 S.W. 3d 668, 672 (Tex. App.—Houston [14th Dist.] 2015, pet. denied).[3]

Statements to police regarding incidences of perceived wrongdoing are protected by the TCPA. *Murphy USA, Inc. v. Rose*, 12-15-00197-CV, 2016 WL 5800263, at *3 (Tex. App.—Tyler Oct. 5, 2016, no. pet. h.) (mem. op.). Appellees asserted counterclaims for business disparagement and defamation in direct response to Richard's notifying the police that he believed appellees had switched stones. Therefore, their claims are based on, relate to, or are in response to Richard's exercise of his right to petition and the TCPA applies. *See* Tex. Civ. Prac. & Rem. Code § 27.005(b).

Further, under the TCPA, a communication made in connection with a matter of public concern constitutes an exercise of the right of free speech. Tex. Civ. Prac. & Rem. Code § 27.001(3). A "matter of public concern" is statutorily defined to include an issue related to a good, product, or service in the marketplace. Tex. Civ. Prac. & Rem. Code § 27.001(7)(E). Appellees asserted counterclaims for business disparagement and defamation in direct response to Richard's reporting to the Better Business Bureau that he believed appellees had switched stones. Thus the issue related to a good, product, or service in the

---

[3] We note that in this case neither party disputes appellees' counterclaims implicated the TCPA. Thus neither party contests the initial showing was made.

marketplace and appellees' claims are based on, relate to, or are in response to Richard's exercise of his right to free speech. *See Better Bus. Bureau of Metro. Dallas, Inc. v. BH DFW, INC.*, 402 S.W.3d 299, 308 (Tex. App.—Dallas 2013, pet. denied). Accordingly, the TCPA applies. *See* Tex. Civ. Prac. & Rem. Code § 27.005(b).

Accordingly, we conclude appellants made the initial showing required under the TCPA. Tex. Civ. Prac. & Rem. Code § 27.005(b). Therefore the burden shifted to appellees. Tex. Civ. Prac. & Rem. Code § 27.005(c).

### III.   WAS A PRIMA FACIE CASE ESTABLISHED?

Once the initial showing is made, the non-movant bears the burden to establish by clear and specific evidence a prima facie case for each essential element of the claim in question. Tex. Civ. Prac. & Rem. Code § 27.005(c). Dismissal of the claim is mandatory if the non-movant fails to satisfy this burden. Tex. Civ. Prac. & Rem. Code § 27.005(b). In determining whether the non-movant has met his burden, courts consider "the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." Tex. Civ. Prac. & Rem. Code § 27.006(a). We review de novo whether the non-movant has met this burden. *Deaver v. Desai*, 483 S.W. 3d 668, 672 (Tex. App.—Houston [14th Dist.] 2015, pet. denied). In a single issue, appellants contend the trial court erred in denying their motion to dismiss because appellees failed to present clear and specific evidence of the essential elements of their counterclaims.

### A.   *A Prima Facie Case*

The term "clear and specific evidence" refers to the quality of evidence required to establish a prima facie case, while the term "prima facie case" refers to the amount of evidence required to satisfy the non-movant's minimal factual

burden. *See Combined Law Enforcement Ass'n of Tex. v. Sheffield*, No. 03–13–00105–CV, 2014 WL 411672, at \*10 (Tex. App.—Austin Jan. 31, 2014, pet. denied) (mem. op.). "Clear and specific evidence" requires a non-movant to provide enough detail to show the factual basis for his claim. *In re Lipsky*, 460 S.W. 3d 579, 591 (Tex. 2015) (orig. proceeding). "Conclusory statements are not probative and accordingly will not suffice to establish a prima facie case." *Better Bus. Bureau of Metro. Houston, Inc. v. John Moore Servs., Inc.,* 441 S.W.3d 345, 355 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (citing *In re E.I. DuPont*, 136 S.W.3d at 223–34); *see also Lipsky* 460 S.W.3d at 592 (explaining that "bare, baseless opinions" are not "a sufficient substitute for the clear and specific evidence required to establish a prima facie case" under the TCPA). "Prima facie evidence" is that "minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." *Id.* at 590 (quotations and citations omitted). A prima facie case may be established through circumstantial evidence. *Id.* at 591.

B.  *The Essential Elements*

Appellants contend appellees failed to establish a prima facie case for each element of its business disparagement claim and this failure was not affected by appellees amendment of their counterclaims eliminating business disparagement after appellants moved to dismiss under the TCPA. Because appellants met their initial burden under the TCPA, their motion to dismiss survived appellees' amendment of their counterclaims. *See Rauhauser v. McGibney*, No. 02-14-00215-CV, 2014 WL 6996819, at \*2 (Tex. App.—Fort Worth 2014, no pet.) (citing *CTL/Thompson Tex., LLC v. Starwood Homeowner's Ass'n*, 390 S.W.3d 299, 300-01 (Tex. 2013); *Villafani v. Trejo*, 251 S.W.3d 466, 468-69 (Tex. 2008); *Klein v. Dooley*, 949 S.W.2d 307, 308 (Tex. 1997)). Thus the issue of whether the trial

court erred by failing to grant appellants' motion to dismiss as to this claim can properly be raised on appeal. *Id.*

To prevail on a business disparagement claim, a plaintiff must establish that (1) the defendant published false and disparaging information about it, (2) with malice, (3) without privilege, (4) that resulted in special damages to the plaintiff. To recover for defamation,[4] the plaintiff must prove (1) the publication of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with the requisite degree of fault, and (4) damages, in some cases. *Lipsky*, 460 S.W.3d at 593.

Regarding defamation, the requisite degree of fault is determined by the status of the person allegedly defamed. *Id.* A private individual need only prove negligence. *Id.* "Negligence" is established upon a showing the published knew or should have known that the defamatory statement was false. *See Foster v. Laredo Newspapers, Inc.*, 541 S.W.2d 809, 819 (Tex. 1976). However, the non-movant has the burden to prove actual malice if the publisher has a qualified privilege which excuses the publication. *Associated Tel. Directory Publishers, Inc. v. Better Bus. Bureau of Austin, Inc.*, 710 S.W.2d 190, 192 (Tex. App.—Corpus Christi 1986, writ ref'd n.r.e.).[5]

"Actual malice in this context does not mean bad motive or ill will but rather

---

[4] Libel is defamation in written or other graphic form that tends to injure a person's reputation, exposing the person to public hatred, contempt, or ridicule. *See* Tex. Civ. Prac. & Rem. Code Ann. § 73.001 (Vernon 2003); *Doe v. Mobile Video Tapes, Inc.,* 43 S.W.3d 40, 48 (Tex. App.—Corpus Christi 2001, no pet.). Slander is orally communicated defamation. *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995); *Doe*, 43 S.W.3d at 48.

[5] A qualified privilege applies to communications made in good faith on any subject matter in which the author has an interest, or with reference to which he has a duty to perform to another person having a corresponding interest or duty. *Associated Tel. Directory Publishers, Inc.*, 710 S.W.2d at 192; *Vista Chevrolet, Inc. v. Barron*, 698 S.W.2d 435, 436 (Tex. App.—Corpus Christi 1985, no writ).

knowledge of, or reckless disregard for, the falsity of a statement." *Greer v. Abraham*, 489 S.W.3d 440, 443 (Tex. 2016). To establish reckless disregard, appellants must establish that appellees entertained serious doubts as to the truth of the publication. *See Hotze v. Miller*, 361 S.W. 3d 707, 713 (Tex. App.—Tyler 2012, pet. denied).

### C.   *The Challenged Elements*

Appellants argue appellees did not provide any actual evidence that the statements were false, that Richard knew they were false, or that he acted with reckless disregard as to the alleged falsity of the statements.[6] Further, appellants claim appellees presented no evidence of defamation *per se* because Richard's allegations do not unambiguously accuse appellees of a crime and Richard was privileged to make those comments to the police department.

The police report reflects the following:

- Mr. Ford stated that the owner showed him a diamond that he liked and valued it at $7,700.

- Mr. Ford advised that he noticed later that it was not the same diamond they agreed on.

Richard made the following statements in his complaint to the BBB:

- Buchannan quoted him $7,700 for a "high quality princess cut stone" slightly less than one carat.

- The diamond put in the ring was I-2 quality with a surface fracture, valued at $1,600.00, which he would never have chosen.

Thus Richard's statements to the police and the BBB allege the diamond he chose for a price of $7,700 was not the diamond put in the ring.

---

[6] Appellants make no claim the statements were not defamatory or disparaging.

According to the affidavits of both Bland and Buchanan, Richard selected a different stone to put in the ring than the one he viewed outside the store with Buchanan. The stone selected by Richard was .95 carat and was not GIA certified. Further, Buchanan averred as follows:

> I have reviewed Mr. Ford's affidavit attached to the motion to dismiss, the alleged police report and the alleged complaint to the BBB. Mr. Ford's statements that he asked us to replace the .5 carat princess cut center stone with a 1 carat princess cut of better quality is false. His statement that I showed him a very nice high quality princes-cut stone that was slightly smaller than 1 carat is false. His statement that I quoted him a price of $7,700.00 for the diamond and $2,300.00 for the remaining work is false.

Bland's affidavit also swears to these facts. The price quote attached to Bland's affidavit reflects $2,436.00 for one .95 carat princess diamond. Both Bland and Buchanan averred that Richard reviewed the quote with Bland and gave his approval. Appellees' affidavits are clear and specific evidence that Richard's statements were false.

Further, appellants contend appellees did not provide any evidence that Richard knew the statements were false or that he acted with reckless disregard as to whether the statements were false. Regarding the claim for business disparagement, it must be shown the information was published with malice. As to the defamation claims, the requisite degree of fault is malice if appellants have a qualified privilege. *Marathon Oil Co. v. Salazar*, 682 S.W.2d 624, 631 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.) (stating a qualified privilege is lost if the communication was made with malice). Appellants asserted qualified privilege as an affirmative defense in their answer to appellees' counter-claims but it was not raised in appellants' motion to dismiss or their briefs on appeal.[7]

---

[7] For this reason, we are not called upon to decide whether appellants have a qualified

Appellees contend the consequence of appellants' failure is that our analysis is based upon a negligence standard, rather than the malice standard that arises with qualified privilege. However, appellees' counter-claims alleged the statements "were made knowingly and with malice" and sought exemplary damages on that basis. Accordingly, we apply the higher standard. *Frank B. Hall & Co., Inc. v. Buck*, 678 S.W.2d 612, 621 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.) ("It is well-settled that exemplary damages may be allowed in a defamation case where the defamed party establishes the existence of a wilful or wanton act sufficient to support a finding of malice.").

As noted above, the facts set forth by the affidavits of Bland and Buchanan directly contradict Richard's version of events. They therefore constitute clear and specific evidence that Richard made those statements either knowing they were false or with reckless disregard as to whether they were false.

Appellants also assert appellees have no evidence of damages and their claim that Richard's statements constitute defamation *per se* are without merit. Appellants further contend no evidence of special damages was presented. We address the latter first.

For a claim of business disparagement, proof of special damages is an essential part. *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003). The requirement goes to the cause of action itself and requires the plaintiff to establish pecuniary loss that has been realized or liquidated, as in the case of specific lost sales. *Id.* Moreover, the communication must play a substantial

---

privilege. We note that the question of privilege is one of law when the language used is unambiguous or when the facts and circumstances surrounding the published defamation are undisputed. *Christy v. Stauffer Publ'ns, Inc.*, 437 S.W.2d 814, 815 (Tex. 1969). Where the language is ambiguous, or the facts are disputed, however, it is a question of fact whether the qualified privilege applies.

part in inducing others not to deal with the plaintiff with the result that special damage, in the form of the loss of trade or other dealings, is established. *Id.*

Bland's affidavit states that appellants came to the store and Richard began yelling and cursing at her. According to Bland, "[a] customer came in for a watch battery, but left because of Mr. Ford's outbursts." Thus the affidavit provides enough detail to show the factual basis of the claim for special damages. *Lipsky*, 460 S.W.3d at 590. Because there was clear and specific evidence that Richard's accusations precipitated the loss of trade, the trial court did not err in denying appellants' motion to dismiss as to the business disparagement claim.

We now turn to the damages element of a defamation claim. Defamation is delineated into defamation *per se* and *per quod*. *Hancock v. Variyam*, 400 S.W.3d 59, 63–64 (Tex. 2013). Statements that are defamatory *per quod* are actionable only upon allegation and proof of damages. *See Texas Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*, 219 S.W.3d 563, 580 (Tex. App.—Austin 2007, pet. denied). To recover for defamation *per quod*, a plaintiff must carry his burden of proof as to both the defamatory nature of the statement and the amount of damages caused by its publication. *Id.* (citing *Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369, 374 (Tex. 1984)). In cases involving defamation *per se*, damages are presumed to flow from the nature of the defamation itself and, generally, the injured plaintiff is entitled to recover general damages without specific proof of the existence of harm. *Exxon Mobil Corp. v. Hines*, 252 S.W.3d 496, 501 (Tex. App.—Houston [14th Dist.] 2008, pet. denied); *see also Bentley v. Bunton*, 94 S.W.3d 561, 604 (Tex. 2002). ("Our law presumes that statements that are defamatory per se injure the victim's reputation and entitle him to recover general damages, including damages for loss of reputation and mental anguish.").

Statements that (1) unambiguously charge a crime, dishonesty, fraud, rascality, or general depravity or (2) are falsehoods that injure one in his office, business, profession, or occupation are defamatory *per se*. *KTRK Television, Inc. v. Robinson*, 409 S.W.3d 682, 690 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (citing *Main v. Royall*, 348 S.W.3d 381, 390 (Tex. App.—Dallas 2011, no pet.)). "Remarks that adversely reflect on a person's fitness to conduct his or her business or trade are also deemed defamatory *per se*. *Lipsky*, 460 S.W.3d at 596 (citing *Hancock*, 400 S.W.3d at 66). Defamation *per se* involves statements that are so obviously hurtful to a person's reputation that the jury may presume general damages. *Hines*, 252 S.W.3d at 501. Generally, it is a question of law whether a statement qualifies as defamation *per se*. *Id.*

As set forth above, Richard's statements alleged Bland and Buchanan used a different diamond than the one he chose for a price of $7,700 in the ring. At the very least, Richard's statements unambiguously charged appellees were dishonest. Because the statements qualify as defamation *per se*, appellees have met their burden regarding the damages element of their claim for defamation. For these reasons, we conclude appellees established a prima facie case of the essential elements of their counterclaims.

### IV. WAS A VALID DEFENSE ESTABLISHED?

Lastly, we consider appellants' argument that Richard's comments to the police department were privileged. Appellants claim an absolute privilege on the basis of consent because Buchanan suggested Richard go to the police.[8] Section 27.005(d) of the Texas Civil Practice and Remedies Code provides:

> Notwithstanding the provisions of Subsection (c), the court shall dismiss a legal action against the moving party if the moving party

---

[8] Appellants do not contend this privilege extends to the statements made to the BBB.

establishes by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim.

Tex. Civ. Prac. & Rem. Code § 27.005. "A defendant may defeat liability for defamation by showing that the plaintiff consented to the allegedly defamatory communication." *Rouch v. Cont'l Airlines, Inc.,* 70 S.W.3d 170, 172 (Tex. App.—San Antonio 2001, pet. denied). The absolute privilege created by consent is unaffected by a finding that the speaker acted with malice. *Smith v. Holley*, 827 S.W.2d 433, 438 (Tex. App.—San Antonio 1992, writ denied).

Buchanan's affidavit states that he told appellants "to go to the police and make a case. I told them that I would be more than happy to discuss the case with the police . . ." By referring appellants to the police, appellees "clearly had reason to expect a defamatory statement." *Oliphint v. Richards*, 167 S.W.3d 513, 516 (Tex. App.—Houston [14th Dist.] 2005, pet. denied). Because appellees invited the alleged defamation, their counter-claim as to the statements made to the police are barred. *Id.* Accordingly, the trial court erred in denying appellants' motion to dismiss appellees' claims for defamation arising from Richard's statements to the police.

## V. CONCLUSION

We conclude appellees established a prima facie case for the essential elements of business disparagement and defamation. However, appellees' claim for defamation based upon the statements made to the police are barred by the absolute privilege of consent. Accordingly, we reverse the trial court's order denying appellants' motion to dismiss pursuant to the TCPA in part, render judgment dismissing that claim, and remand for further proceedings relating to appellants' court costs, attorney's fees, expenses, and request for sanctions under section

27.009(a)(1) and (2) of the TCPA. In all other respects, the trial court's order is affirmed.


/s/     John Donovan
        Justice


Panel consists of Justices Busby, Donovan, and Wise.