Daniel FREE & Wife, Karen
Free, Appellants,

v.

AMERICAN HOME ASSURANCE
CO. & American International
Group, Inc., Appellees.

No. 01–94–00035–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

June 1, 1995.

**52**

Albert S. Low, Jr., Houston, for appellants.

Andrew F. Spalding, Phillip D. Sharp, Houston, for appellees.

Before OLIVER–PARROTT, C.J., and MIRABAL and O'CONNOR, JJ.

## OPINION

OLIVER–PARROTT, Chief Justice.

Appellants, Daniel and Karen Free, appeal from a take-nothing summary judgment in their suit for defamation and intentional infliction of emotional distress. We affirm in part and reverse and remand in part.

### Background facts and procedural history

Daniel Free was employed as an auditor by appellees, American Home Assurance Co. and American International Group (collectively, "AIG"). In April of 1991, Free got into a squabble with his immediate supervisor, Darrell Boyd. On April 19, 1991, Free was asked to resign, and on April 22, he tendered his letter of resignation. This letter, which was part of AIG's motion for summary judgment, details the events leading to Free's resignation. In the letter, Free attributed his termination to a misunderstanding between Boyd and himself. After resigning, Free sued AIG for slander, intentional infliction of emotional distress, and negligence, based on three separate conversations:

(1) a telephone conversation between Boyd and Craig Peterson, an employment "headhunter;"

(2) a conversation between Boyd and Loren McGlade, Boyd's supervisor; and

(3) a conversation between Boyd and Elaine Predmore, a fellow AIG auditor.

The content of these conversations is undisputed: The Peterson conversation was surreptitiously tape recorded by Peterson, and the substance of the McGlade and Predmore conversations was not contested by AIG. The transcript of the Peterson conversation indicates that Boyd referred to Free as a "lightweight" who "lacked a comprehensive grasp of what was necessary to handle large accounts," failed to produce, failed to follow through, and who "would vacillate, procrastinate and allow things to languish entirely too long."

AIG conceded, for the purposes of summary judgment, Free's allegation that Boyd told Elaine Predmore, another auditor, that Free was fired "because he had lied about where he was, had falsified his itinerary, and persisted in lying about where he was when confronted about his work schedule." AIG also conceded that the Boyd/McGlade conversation occurred exactly as Free alleged.

AIG moved for summary judgment on several grounds, attacking elements of Free's causes of action as well as setting up affirmative defenses. The trial court rendered summary judgment in favor of AIG, and Free appeals.

### Standard of Review

■ Under TEX.R.CIV.P. 166a(c), a summary judgment is proper for a defendant if its summary judgment proof establishes, as a matter of law, that there is no genuine issue of material fact concerning one or more of the essential elements of the plaintiff's cause of action. *Goldberg v. United States Shoe Corp.,* 775 S.W.2d 751, 752 (Tex.App.—Houston [1st Dist.] 1989, writ denied). A summary judgment for the defendant disposing of the entire case is proper only if, as a matter of law, the plaintiff could not succeed upon any of the theories in its petition. *Havens v. Tomball Community Hosp.,* 793 S.W.2d 690, 691 (Tex.App.—Houston [1st Dist.] 1990, writ denied).

■ In reviewing the granting of a motion for summary judgment, this Court will take all evidence favorable to the non-movant as true. *MMP, Ltd. v. Jones,* 710 S.W.2d 59, 60 (Tex.1986); *Goldberg,* 775 S.W.2d at 752. Every reasonable inference will be indulged in favor of the non-movant, as will any reasonable doubt. *Id.*

■ When, as in this case, the defendant moves for summary judgment on its own affirmative defenses, the defendant has the burden of proving each element of its defense as a matter of law. *Montgomery v. Kennedy,* 669 S.W.2d 309, 310–11 (Tex.1984). In this case, the trial court rendered a general summary judgment. Therefore, we must consider whether any of the theories asserted by AIG are meritorious. *State Farm Fire & Cas. Co. v. S.S.,* 858 S.W.2d 374, 380 (Tex.1993); *Hardy Road 13.4 Joint Venture v. Med. Center Bank,* 867 S.W.2d 889, 892

(Tex.App.—Houston [1st Dist.] 1993, writ denied).

### Slander

AIG attacks Free's claim of slander on three grounds. First, AIG contends that Boyd's statements to Peterson were not defamatory as a matter of law; second, that the Peterson conversation was invited by Free; and third, that all three conversations were protected by a qualified privilege.

**1. Defamation as a matter of law**

■ The trial court was provided with a tape recording of the Peterson conversation. AIG contends that the tape (and the transcript of the tape) eliminate any material issue of fact regarding whether Boyd said anything defamatory. The transcript of the conversation indicates that Boyd referred to Free as a "lightweight" who "lacked a comprehensive grasp of what was necessary to handle large accounts," failed to produce, failed to follow through, and who "would vacillate, procrastinate and allow things to languish entirely too long."

AIG does not argue that Boyd's statement to Peterson was true, or even that it was protected opinion. *See, e.g., Yiamouyiannis v. Thompson,* 764 S.W.2d 338, 340 (Tex. App.—San Antonio 1988, writ denied). Instead, AIG argues that Boyd's statement was simply not capable of a defamatory meaning.

■ A statement may be false, abusive, and unpleasant without being defamatory. *Schauer v. Memorial Care Sys.,* 856 S.W.2d 437, 446 (Tex.App.—Houston [1st Dist.] 1993, no writ). Whether words are reasonably capable of a defamatory meaning is a question of law for the court. *Carr v. Brasher,* 776 S.W.2d 567, 570 (Tex.1989). Only if the court determines that the language is ambiguous should the jury be permitted to determine the statement's meaning and the effect the statement has on the ordinary listener. *Musser v. Smith Protective Servs., Inc.,* 723 S.W.2d 653, 655 (Tex.1987).

■ A statement is defamatory if the words tend to injure a person's reputation, exposing the person to public hatred, contempt, ridicule, or financial injury. *Einhorn*

*v. LaChance,* 823 S.W.2d 405, 411 (Tex. App.—Houston [1st Dist.] 1992, writ dism'd w.o.j.). In addition, however, words which are otherwise not actionable can become so if they affect a person injuriously in his or her office, profession, or occupation. *Gulf Constr. Co. v. Mott,* 442 S.W.2d 778, 783 (Tex.Civ.App.—Houston [14th Dist.] 1969, no writ). In this case, Free's summary judgment evidence included the deposition of Craig Peterson, the professional recruiter hired by Free. Peterson stated that Boyd's statement to him was "a very skillful blackball" and that "someone with that kind of a stigma attached to his background is probably not going to find gainful employment at any significant level." Boyd essentially branded Free an incompetent. Free established a fact issue as to whether Boyd's statement to Peterson was capable of a defamatory meaning. Summary judgment was therefore improper to the extent that it was based on AIG's contention that even assuming the statements were false, nothing defamatory was ever said to Peterson.

**2. Affirmative defense of invitation**

■ AIG argues that even if Boyd made defamatory statements about Free, summary judgment was still proper, because as a matter of law Boyd's statements were protected by the affirmative defense of invitation. A plaintiff may not recover for a publication to which he has consented, or which he has authorized, procured, or invited. *Ramos v. Henry C. Beck Co.,* 711 S.W.2d 331, 336 (Tex.App.—Dallas 1986, no writ). This privilege has been applied where the plaintiff has given references to a prospective employer, and the former employer makes defamatory statements. *See, e.g., Smith v. Holley,* 827 S.W.2d 433, 437 (Tex.App.—San Antonio 1992, writ denied). The privilege bars recovery even if the speaker acted with malice. *Id.* at 438.

■ Relying on *Frank B. Hall & Co. v. Buck,* 678 S.W.2d 612, 618 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.), *cert. denied,* 472 U.S. 1009, 105 S.Ct. 2704, 86 L.Ed.2d 720 (1985), Free argues that the fact that Free told Peterson that Boyd was his former supervisor does not bar his claim for

defamation because he did not know what Boyd would say. The court in *Buck* allowed recovery despite the invitation defense, because there was no evidence that the plaintiff knew in advance what the defendant might say about the plaintiff. *Id.* at 619. Here, the parties dispute the extent and nature of the prior knowledge that Free had.

AIG contends that Free's letter of resignation eliminates any genuine issue of material fact about whether Free knew that Boyd would defame him. This argument is unpersuasive. Free's letter of resignation stated that he had been asked to resign because "Boyd believed I had intentionally misinformed him as to my location the morning of April 18, 1991." Free's letter went on to recount the circumstances leading to his resignation:

> Mr. Boyd started asking me about the status of the various audits I was working on. These files were not in one central location so I began to move about my office to retrieve these files while attempting to continue my conversation with Mr. Boyd. When he came to an audit file by the name of Ivex Packaging, Mr. Boyd claims that instead of requesting the status of the file he asked if I had been out to the insureds the morning of the 18th. I understood him to be asking the same as he had been on all the other files and proceeded to give him the status of the audit to date. When Mr. Boyd got what he thought was an affirmative answer to his question concerning my location the morning of the 18th he called Mr. Denis Sucec at Ivex to confirm. Mr. Sucec told him I had not been there the morning of the 18th.

Free concluded the letter by stating that he was protesting his resignation because "it may create the appearance that I agree with the erroneous allegation, which I do not."

AIG argues that the letter effectively accuses Boyd of making "erroneous allegations." Nowhere in the letter, however, does Free accuse Boyd of knowingly or purposely manufacturing allegations against him. Rather, the above-quoted language suggests that the incident was caused as much by simple miscommunication as anything else.

While the letter constitutes some evidence that Free had reason to believe that Boyd might not speak favorably about him, it certainly does not establish the fact as a matter of law.

We hold that AIG failed to establish, as a matter of law, its affirmative defense of invitation.

### 3. Qualified privilege

■ AIG also contends that all three conversations were protected by a qualified privilege. The parties agree that under the facts of this case, whether a qualified privilege exists is a question of law. *Schauer,* 856 S.W.2d at 449; *Houston v. Grocers Supply Co.,* 625 S.W.2d 798, 800 (Tex.App.—Houston [14th Dist.] 1981, no writ). A qualified privilege protects communications made in good faith on a subject in which the author has an interest or a duty to another person having a corresponding interest or duty. *Martin v. Southwestern Elec. Power Co.,* 860 S.W.2d 197, 199 (Tex.App.—Texarkana 1993, no writ).

■ AIG had the burden of proving good faith, an interest to be upheld, a statement limiting its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only. *Martin,* 860 S.W.2d at 199. The law presumes good faith and want of malice where the statement is qualifiedly privileged. *Marathon Oil Co. v. Salazar,* 682 S.W.2d 624, 630 (Tex.App.— Houston [1st Dist.] 1984, writ ref'd n.r.e.). The privilege is lost, however, if the statement was in any degree actuated by malice. *Id.* at 631. The general rule is that when publication of an allegedly defamatory statement is made under circumstances creating a qualified privilege, the plaintiff has the burden to prove malice. Where the defendant moves for summary judgment, however, the defendant assumes the burden of proving the absence of malice. *Martin,* 860 S.W.2d at 199.

■ Free apparently concedes that AIG established the applicability of the privilege. Indeed, it is clear that Boyd's statements to Peterson were made under circumstances creating the qualified privilege. The privi-

lege applies to statements made by a former employer to a prospective employer or to a headhunter such as Peterson. *Pioneer Concrete v. Allen,* 858 S.W.2d 47, 50 (Tex.App.—Houston [14th Dist.] 1993, writ denied). Likewise, there is no dispute that Boyd's statements to McGlade and Predmore concerned Free's performance of his duties at AIG and his compliance with AIG policies.

Free argues, however, that AIG failed to prove that Boyd acted without malice. We agree. In its motion for summary judgment, AIG presented the trial court with the affidavits of Predmore and McGlade. Both affiants stated that they did not feel that Boyd's statements to them were malicious. The issue, however, was *Boyd's* state of mind. AIG was required to disprove, as a matter of law, that Boyd either knew his statements were false or was reckless concerning their falsity. *Carr,* 776 S.W.2d at 571. In *Casso v. Brand,* 776 S.W.2d 551, 559 (Tex.1989), the Texas Supreme Court held that the defendant's own affidavit attesting to the absence of malice can be sufficient to require the plaintiff to establish malice by independent evidence. Here, however, AIG never introduced any evidence concerning *Boyd's* subjective state of mind. Thus, AIG failed to establish, as a matter of law, that Boyd's statements were privileged.

### Emotional distress

 To prevail in a suit for intentional infliction of emotional distress, the plaintiff must show: (1) intentional or reckless conduct; (2) that is extreme or outrageous; (3) that caused emotional distress; (4) that was severe in nature. *Twyman v. Twyman,* 855 S.W.2d 619, 621 (Tex.1993). In its motion for summary judgment, AIG argued (1) that nothing Boyd did or said was "extreme and outrageous;" and (2) that Boyd was not acting within the course and scope of his employment with AIG and thus did not render AIG liable under respondeat superior.

 Nothing Boyd said to Peterson was "extreme and outrageous." Although we have held that there was a fact issue whether Boyd's statements to Peterson were defamatory, calling Free a "lightweight" who "allowed things to languish" simply cannot be considered so utterly intolerable or atrocious as to sustain a claim of intentional infliction of emotional distress. *Randalls Food Market, Inc. v. Johnson,* 891 S.W.2d 640, 644 (Tex.1995).

### Negligence

Free's petition alleged that AIG's negligent supervision of Boyd resulted in Boyd's slander and intentional infliction of emotional distress on Free. On appeal, AIG argues that because both the slander and the emotional distress claims fail, the negligence claim must also fail. Because we have reversed the judgment of the trial court as to the slander claim, however, this argument is inapplicable. Thus, there are no grounds to support the summary judgment as to Free's claim of negligence.

We sustain points of error one, three, and four. We overrule point of error two.

### Motion for new trial

Free's fifth point of error is that the trial court erred in overruling Free's motion for new trial. Nothing in Free's brief mentions or addresses this alleged error. Free has abandoned this point on appeal. *Raitano v. Texas Dept. of Public Safety,* 860 S.W.2d 549, 554 ((Tex.App.—Houston [1st Dist.] 1993, writ denied) (a point of error unsupported by the citation of authority presents nothing for review). We overrule point of error five.

### Conclusion

We affirm the trial court's judgment as to intentional infliction of emotional distress, and reverse and remand as to slander and negligence.