NUMBER 13-97-418-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI

___________________________________________________________________


NEDAL MTWALY , Appellant,



v.




U.S. SPRINT, SOUTHWESTERN BELL TELEPHONE COMPANY AND

GEORGE RODRIGUEZ , Appellees.

___________________________________________________________________



On appeal from the 55th District Court

of Harris County, Texas.

____________________________________________________________________



O P I N I O N



Before Justices Dorsey, Hinojosa, and Kennedy (1)

Opinion by Justice Kennedy



 Appellant, Nedal Mtwaly, (Mtwaly) purchased telephone services from appellees U.S. Sprint (Sprint) and Southwestern
Bell Telephone Company (SWB or Southwestern Bell) through Sprint's employee, George Rodriguez, in order to operate
an overseas relay telephone business. (2) The business was designed to operate three-way calling service for customers in
Lebanon through phone lines in the United States.

 After Mtwaly had been operating for a short period of time his telephone numbers showed up on a warning system
developed by Sprint to alert Sprint of possible fraud. Sprint reported the alert to the Texas Department of Public Safety
(DPS) and requested an investigation. In pursuance of the requested investigation, the DPS confiscated business records
from Mtwaly which were duly returned. The Harris County District Attorney also conducted an investigation. Mtwaly did
no further business after the records were returned. No evidence of fraud was found.

 Sprint billed Mtwaly for $38,359.64 for long distance services furnished to him. Mtwaly never paid the bill.

 Mtwaly sued Sprint, SWB, and Rodriguez alleging negligence, gross negligence, breach of warranties, breach of contract,
violations of the Texas Deceptive Trade Practices Act (DTPA), and slander per se. Sprint counterclaimed for its bill for
long distance services and attorney's fees.

 At the close of Mtwaly's evidence, the trial court granted a directed verdict for Sprint, SWB, and Rodriguez on Mtwaly's
claims. The case was then submitted to the jury on Sprint's claim for telephone services and the jury found in favor of
Sprint. A judgment was entered for Sprint in the amount of $38,359.64, attorney's fees, and pre and post-judgment interest.

 Appellant's first brief filed herein was rejected by this court because it did not conform to the court's rules in several
respects. He was ordered to rebrief, which he has done. His subsequent brief conforms to this court's rules, however, it is
difficult to come to grips with. With respect to his complaint that a directed verdict should not have been granted,
appellant makes many references in his brief which he claims offer proof to substantiate his various causes of action. We
have carefully read every word in the record of the trial, even more extensively than his referenced points, and can find
nothing, either specifically or collectively, to support his claims of: 1) breach of contract, 2) breach of express warranty, 3)
deceptive trade practices, 4) negligence or, 5) gross negligence.

 Rule 38.1(h) of the rules of appellate procedure, under the heading, "Appellant's Brief," states: "Argument. The brief must
contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."
This he has not done. As examples, we note the following: Appellant alleges breach of contract, yet by his own testimony
he never had a contract with Sprint. He alleges breach of express warranty in that appellee Rodriguez did not set up an
account at Sprint as he promised, but he does not connect this to the alleged "disastrous results" to appellant. In addition,
had Rodriguez not set up an account with Sprint the subsequent investigation would not have occurred.

 Appellant charges breach of implied warranty of good and workmanlike services but he does not connect the alleged
deficiency with any specific damages. In addition, the evidence is undisputed that appellees furnished to appellant the
requested service. The trouble started when the DPS began its investigation of appellant by seizing his records. As an
example of deceptive trade practices he again refers to Rodriguez's promise to set up an account at Sprint but notes that he
"obtained Sprint long distance service for [appellant] in an unethical manner through Southwestern Bell" which "caused
Sprint to become suspicious and produce disastrous results for [appellant]." We are left to search through the record and
ascertain the connection between the act and the damages. We have carefully searched the record and find nothing to
substantiate unethical conduct on the part of Rodriguez. (3)

 From the entire record the story that unfolds from this whole transaction is this: Appellant was in the auto body repair
business. From his brother in Lebanon, he learned of a need for three-way telephone service in the Middle East because
some countries there had no way to communicate with other countries. He learned the name of one individual in Lebanon
who could provide customers there for appellant's service. Although he had no experience in the telephone business,
appellant bought telephone lines from Sprint, Southwestern Bell, and A T & T and went into business.

 A short time later, a security man with Sprint was alerted by a system set up to detect fraud involving possible theft of
services involving certain phones assigned to appellant. As he had done in the past, this security man requested an
investigation by the DPS. It is undisputed that the Sprint security man did not suggest to the DPS how the investigation
should proceed.

 Agents of the DPS seized appellant's phones and records and conducted an investigation. The DPS found no evidence of
fraud and returned the phones and records to appellant. Appellant did not go back into business, and he paid off a
judgment taken against him in a Lebanese court by his contact there for failure to perform. (4)

 We divide the complaints raised by appellant's fourteen points of error into four classes, as follows:

 1. The trial court erred in ruling that appellant had not carried his burden on negligence, gross negligence, breach of
warranties, breach of contract, and for violations of the D.T.P.A.



 2. The trial court erred in ruling that appellant had not carried his burden on slander.



 3. The trial court erred in its rulings on objections made by appellant during the trial.



 4. The insufficiency of Sprint's evidence to support its counterclaim for services rendered to appellant.



 In ruling upon the correctness of a directed verdict, we concur with appellant that we are bound by the law as set out in
Jones v Falcon, 875 S.W.2d 29, 30 (Tex.App.--Houston [14th Dist.] 1994, writ denied), to wit:

 In reviewing an instructed verdict, an appellate court "must consider all of the evidence in the light most favorable to the
party against whom the verdict was instructed, disregarding all contrary evidence and inferences." (Citations omitted). In
doing so, the court must determine if material questions of fact are present on which reasonable minds could differ.



GRANT OF DIRECTED VERDICT


 As stated earlier, we have read every word of the record. If we assume everything appellant says to be true, we find no
evidence that appellees did not set appellant up in the business that he requested and that appellant operated the business
and made a profit until the investigation temporarily shut him down. The evidence is clear that there was no reason why
appellant could not have continued to operate and make a profit when the investigation was concluded, had he chosen to do
so. Appellant had the burden to prove what he alleged as deficient performance and make a causal connection between
appellees' failure to perform and appellant's alleged damages. The record shows that he has not met either burden.

 We hold that the trial court was correct in granting a directed verdict on these allegations. We overrule point of error
number one.

SLANDER-MALICE


 Slander is a defamatory statement that is orally communicated or published to a third person without legal excuse. 
Randall's Food Markets, Inc. v. Johnson, 891 S.W.2d 640, 646 (Tex. 1995). A false statement which charges a person with
the commission of a crime is libelous per se. Leyendecker & Associates, Inc. v. Wechter, 683 S.W.2d 369, 374 (Tex.
1984).

 The record shows that Slaughter, the security man for Sprint, made no statement to the DPS or anyone else accusing
appellant of theft or any other crime. The words "alleged theft of telephone services" appeared in a report made by
Lieutenant Hawkins who is an employee of DPS. Appellant admits in his brief that a qualified privilege applies to
statements by Slaughter to the DPS but alleges no such privilege applies to statements by Slaughter to Southwestern Bell.

 A qualified privilege extends to communications made in good faith on a subject in which the author has an interest or a
duty to another person having a corresponding interest or duty. Martin v. Southwester Electric Power Company, 860
S.W.2d 197, 199 (Tex.App.--Texarkansa, 1993, no writ). This court has held that a defendant Mall had a qualified
privilege to relay information about plaintiff's passing counterfeit bills to stores in the Mall. Mitre v. La Plaza Mall, 857
S.W.2d 752, 754 (Tex.App.--Corpus Christi 1993, writ denied). One of the cases cited by appellant, Free v. American
Home Assurance Company, 902 S.W.2d 51, 54 (Tex.App.--Houston [1st Dist.] 1995, no writ), holds that where an alleged
slanderous statement is made under circumstances creating a qualified privilege, the plaintiff has the burden to prove
malice. Malice requires a showing that the defendant acted with knowledge of, or in reckless disregard to the falsity of the
publicized matter. Mitre, 857 S.W.2d 754. There is no evidence of malice in the record. We overrule appellant's points of
error two and three.

TRIAL COURT'S RULINGS ON EVIDENCE DURING TRIAL


 Appellant's brief, in points four through nine, contains twenty four volume and page cites to alleged errors in trial court
rulings. He cites no authority to support his conclusions as to the errors allegedly committed by any ruling nor does he
present any persuasive argument that contrary rulings would have changed the judge's ultimate ruling that appellant had not
carried his burden. The rules of appellate procedure require " such discussion of the facts and the authorities relied upon as
may be requisite to maintain the point at issue." Tex. R. App. P. 74(f)(2). We will not perform an independent review of
the record and applicable law to determine whether the error complained of occurred. Happy Harbor Methodist Home, Inc.
v. Cowins, 903 S.W.2d 884, 886 (Tex.App.--Houston [1st Dist.] 1995, no writ).

 Appellant's final point of error, number fourteen, states that the directed verdict and the verdict on Sprint's counterclaim
are manifestly unjust. In support thereof, we are referred to "the totality of the evidence and interaction between the court
and the parties in this cause."

 The argument in support of this point is here stated verbatim:

 The multitude of errors large and small, evident on the face of the record (only a small number of which have been cited in
this brief), together with the substance of the evidence presented by Mtwaly in the absence of any defensive case whatever,
render both the directed verdict against Mtwaly and the jury verdict against him on Sprint's counterclaim manifestly unjust.



 It is difficult to understand many of the unfair and erroneous rulings of the court in this case. However, it is apparent that
the result of the proceedings are unjust.



 Appellant has not provided this court with sufficient facts and authority to support his claims of error. We overrule points
of error four through nine and point number fourteen.

INSUFFICIENCY OF EVIDENCE TO SUPPORT COUNTERCLAIM


 A party must seek a new trial as a prerequisite to an appeal complaining of the factual sufficiency of the evidence. Tex.
Rules Civ. Proc. 324(b)(2). Appellant filed three motions for new trial, however, he did not complain of the sufficiency of
the evidence in any of them as to attorney's fees. Even if appellant had complied with the rule, our examination of the
record reveals no insufficiency of the evidence to support the attorney's fees awarded appellee by the jury. Point number
ten alleging insufficiency of the evidence to support attorney's fees is overruled.

 Appellee presented evidence from its records, submitted by the custodian of the records, to substantiate the jury's findings
on long distance service supplied by Sprint to appellant. The records were admitted in evidence. We consider the evidence
factually sufficient. Point of error eleven is overruled.

 Appellant complains that Sprint's counterclaim is not supported by its pleadings. The record shows that Sprint filed a First
Amended Counterclaim alleging actual damages of $38,359.64 (which the jury awarded) plus pre-judgment interest and
post-judgment interest, exemplary damages, its reasonable fees, costs of court and expenses, and for such other and further
relief, etc. This counterclaim was filed on January 4, 1993, more than four years before trial. We overrule points of error
twelve and thirteen.

 Having found no error, we AFFIRM the judgment of the trial court.

Noah Kennedy

Retired Justice



Do not publish.

Tex. R. App. P. 47.3.



Opinion delivered and filed

this 27th day of May, 1999.

1. Retired Justice Noah Kennedy assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to
Tex. Gov't Code Ann. § 74.003 (Vernon 1988).

2. He also purchased lines from A T & T, however they were not made a party hereto.

3. Rodriguez was an employee of Sprint. An employee of another company testified that the manner in which Rodriguez
set up appellant's business would be unethical according to her company's rules, however, she did not say why, nor does she
offer any details as to why she considered what was done to be unethical.

4. Appellant did not contest the lawsuit in Lebanon, nor did he attempt to negotiate a settlement.