Barry A. OLIPHINT, Appellant,

v.

Scott M. RICHARDS and Jacobs Engineering Group, Inc., Appellees.

No. 14–04–00168–CV.

Court of Appeals of Texas, Houston (14th Dist.).

June 7, 2005.

Peter Costea, Houston, for appellants.

Ethel J. Johnson and Stephen Eric Hart, Houston, for appellees.

Panel consists of Justices YATES, EDELMAN, and GUZMAN.

## OPINION

LESLIE BROCK YATES, Justice.

This is a defamation case arising out of a negative employment reference given by appellees, Scott M. Richards and Jacobs Engineering Group, Inc., to a private investigator hired by appellant, Barry A. Oliphint. The trial court granted appellees' motion for summary judgment, and,

in one point of error, Oliphint claims the trial court erred in doing so. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

According to the undisputed summary judgment evidence, Oliphint began working for a subsidiary of Jacobs Engineering in 1984, and he eventually worked directly for Jacobs Engineering until his employment ended in 1991. From 1989 through 1991, Richards was one of Oliphint's supervisors.

The day before Oliphint's employment ended, Oliphint had a heated telephone discussion with another of his supervisors, Jimmy Lee. Lee asked Oliphint to perform an inspection earlier in the day than originally scheduled. Oliphint refused to do so and hung up on Lee. The next day, Richards called Oliphint into his office and said they had decided to terminate Oliphint's employment. After telling his side of the story, Oliphint told Richards that he wanted to quit because he could not work with Lee anymore. Oliphint claims that Richards agreed to document the separation as a resignation. Richards denies this and wrote that Oliphint was terminated for performance and other problems, "all of which are related to alcohol."

A few months later, Oliphint was interviewing for another job. The interviewer asked about his separation from Jacobs Engineering, and Oliphint said he had resigned. Oliphint testified that the interviewer "shook his head in disgust and told me that he could take a lot, but he could not take a liar." When Oliphint pressed the interviewer for more details, the interviewer said, "That's not what Jacobs told me."

Oliphint eventually obtained another job, and during the 1990s, he held various jobs, though he says he was turned down from a second job based on a suspected negative reference from Richards. Oliphint began looking for a new job in 2000 and was not satisfied with the results of his search. In March 2002, Oliphint hired a private investigator to check all of his references. At Jacobs Engineering, the investigator first called the human resources department, which would only verify dates of employment and positions held. The investigator then called Richards directly, who told her that Oliphint had been terminated for "substance abuse problems."

Oliphint denies that he has ever had any substance abuse problems, and based on Richards's statement to the investigator, Oliphint sued Richards and Jacobs Engineering for defamation, intentional infliction of emotional distress, and negligence. Appellees filed a motion for summary judgment, which the trial court granted. This appeal followed.

### ANALYSIS

#### *Standard of Review*

Appellees filed both a traditional motion for summary judgment and a no-evidence motion. *See* TEX.R. CIV. P. 166a(c), (i). The standard of review for a traditional motion for summary judgment is whether the successful movant at the trial level carried its burden of showing that there is no genuine issue of material fact and that judgment should be granted as a matter of law. *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex.1999). A defendant must conclusively negate at least one essential element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex.1997). Under this traditional standard, this court must take as true all evidence favorable to the nonmovant and must make all reasonable inferences in the nonmovant's favor. *See id.* We review a no-evidence summary

judgment de novo by construing the record in the light most favorable to the nonmovant and disregarding all contrary evidence and inferences. *Merrell Dow Pharms., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997). A no-evidence summary judgment is improperly granted when the respondent brings forth more than a scintilla of probative evidence that raises a genuine issue of material fact. *See* TEX.R. CIV. P. 166a(i); *Coastal Conduit & Ditching, Inc. v. Noram Energy Corp.,* 29 S.W.3d 282, 284 (Tex.App.-Houston [14th Dist.] 2000, no pet.). When, as here, a trial court's order granting summary judgment does not specify the grounds relied upon, we must affirm summary judgment if any of the summary judgment grounds are meritorious. *FM Props. Operating Co. v. City of Austin,* 22 S.W.3d 868, 872 (Tex.2000).

### Defamation

A plaintiff may not recover on a defamation claim based on a publication to which he has consented or which he has authorized, procured, or invited. *Lyle v. Waddle,* 144 Tex. 90, 188 S.W.2d 770, 772 (1945); *Frank B. Hall & Co. v. Buck,* 678 S.W.2d 612, 617 (Tex.App.-Houston [14th Dist.] 1984, writ ref'd n.r.e.). Appellees argue that Oliphint's defamation claim is barred because Oliphint consented to or invited publication of the statement at issue by hiring an investigator to solicit a statement from Richards.

Relying on *Buck* and *Free v. American Home Assurance Co.,* 902 S.W.2d 51 (Tex. App.-Houston [1st Dist.] 1995, no writ), Oliphint claims that hiring an investigator to determine the content of a defamatory statement does not amount to consent or invitation to defamation. In *Buck,* the plaintiff, an established salesman, was abruptly fired and was unable to find another job. Buck hired an investigator to

determine the real reason he was fired, and his former employer made defamatory statements about him to the investigator. 678 S.W.2d at 617. When Buck sued for defamation, his former employer argued the statements were invited and therefore could not form the basis of a defamation claim. *Id.* This court rejected the employer's argument, noting "there is nothing in the record to indicate that Buck knew [his former employer] would *defame* him when [the investigator] made the inquiries." *Id.* Similarly, in *Free,* the First Court of Appeals rejected the employer's consent defense to a defamation claim based on statements made to an employment headhunter because the employer could not establish, as a matter of law, that the plaintiff had reason to believe the employer would defame him when he requested that the headhunter check his references. 902 S.W.2d at 53–55.

Whereas in both *Buck* and *Free* the evidence did not establish that the plaintiff had reason to expect defamation when he requested the reference check, that is not the situation here. According to Oliphint's own testimony, he knew within months of leaving that appellees were contradicting Oliphint's account of his separation from Jacobs Engineering, leading a prospective employer to call him a liar. Though he may not have known the exact words that would be said, the undisputed evidence shows that Oliphint clearly had reason to expect a defamatory statement. By hiring an investigator to check his references under these circumstances, Oliphint invited the defamation, and therefore his claim is barred. *See Saucedo v. Rheem Mfg. Co.,* 974 S.W.2d 117, 121 (Tex.App.-San Antonio 1998, pet. denied) (affirming summary judgment on former employee's defamation claim based on consent because the statement was made only after employee requested a reference check when he suspected employer was giving a bad refer-

ence); *Smith v. Holley,* 827 S.W.2d 433, 440 (Tex.App.-San Antonio 1992, writ denied) (concluding that consent barred former employee's defamation suit, in part because, unlike in *Buck,* the employee knew that her former employers had unfavorable opinions about her performance); *see also Rouch v. Cont'l Airlines, Inc.,* 70 S.W.3d 170, 174 (Tex.App.-San Antonio 2001, pet. denied) (distinguishing *Buck* based on evidence of the employee's expectation that employer would make defamatory remarks). Thus, the trial court did not err in granting summary judgment on Oliphint's defamation claim.

### Intentional Infliction of Emotional Distress

■ Oliphint's claim for intentional infliction of emotional distress is based solely on the alleged defamatory statement made to the investigator. However, the Texas Supreme Court has held that intentional infliction of emotional distress is a gap-filler tort that has no application when the conduct at issue invades some other legally-protected interest. *See Hoffmann–La Roche Inc. v. Zeltwanger,* 144 S.W.3d 438, 447 (Tex.2004). "Where the gravamen of a plaintiff's complaint is really another tort, intentional infliction of emotional distress should not be available." *Id.* Though *Hoffmann–La Roche* is a sexual harassment case, the court cited with approval four other state and federal cases applying this theory in the defamation context. *See id.* Because Oliphint did not even attempt to base his intentional infliction of emotional distress claim on facts independent of his defamation claim, we hold that an intentional infliction of emotional distress claim is not available. The trial court did not err in granting summary judgment on this claim.

### Negligence

■ Oliphint's negligence claim is also based on the alleged defamatory statement made to the investigator. Oliphint asserts that appellees owed him a duty not to defame him or supply false information about him to third parties. Appellees argue that such a claim is not a separate cause of action but merely a re-labeled defamation claim. We agree. The courts of this state frown on attempts to fracture one cause of action into multiple claims. *Ross v. Arkwright Mut. Ins. Co.,* 892 S.W.2d 119, 133 (Tex.App.-Houston [14th Dist.] 1994, no writ). In *Ross,* this court rejected the plaintiff's attempt to convert his malicious prosecution and defamation claims into a negligence claim as well. "When the labels attached to the causes of action pled by appellants are ignored, and the pleadings are read for content and analyzed, it is clear, even with a liberal construction, that appellants have pled nothing more than malicious prosecution, defamation, and conspiracy based on these torts." *Id.; see also Tacon Mech. Contractors, Inc. v. Aetna Cas. & Sur. Co.,* 65 F.3d 486, 488 (5th Cir.1995) ("Under Texas law, an attempt such as this to fracture one cause of action into three or four by massaging the labels and language is impermissible.").

To support his argument that a defamation claim can support a claim for negligence, Oliphint relies on *Mitre v. Brooks Fashion Stores, Inc.,* 840 S.W.2d 612 (Tex. App.-Corpus Christi 1992, writ denied). In *Mitre,* shopping mall customers sued individual shop owners for negligence and defamation after flyers accusing the customers of passing counterfeit bills were posted in shops. *Id.* at 615. The Corpus Christi Court of Appeals reversed the trial court's grant of summary judgment in favor of the customers, concluding that because the customers' defamation claim was based on a negligence standard, the customers could also assert a negligence claim

based on that duty. *Id.* at 623. We disagree with the *Mitre* court's analysis. Though a defamation claim not involving a public figure contains a negligence liability standard, that is a component of the defamation claim itself, not a separate claim. *See Dolcefino v. Randolph,* 19 S.W.3d 906, 917 (Tex.App.-Houston [14th Dist.] 2000, pet. denied) (explaining that defamation involving a private citizen requires a showing that a "false statement was made with negligence as to its truth"); *Carabajal v. UTV of San Antonio, Inc.,* 961 S.W.2d 628, 631 (Tex.App.-San Antonio 1998, pet. denied) (referring to "the negligence component of defamation"). Further, *Mitre* is inconsistent with our analysis in *Ross* limiting attempts to fracture claims by massaging labels. We hold that Oliphint cannot maintain a negligence claim based solely on a duty not to defame. Therefore, the trial court did not err in granting summary judgment on Oliphint's negligence claim.

Because we have determined that appellees presented one meritorious ground for summary judgment on each of Oliphint's claims, we need not address the other bases of appellees' summary judgment motion. We overrule Oliphint's sole issue and affirm the trial court's judgment.