# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00317-CV

**Michael Graham, Appellant**

**v.**

**Rosban Construction, Inc. and Jack R. Bandy, Appellees**

## FROM THE DISTRICT COURT OF BURNET COUNTY, 33RD JUDICIAL DISTRICT NO. 30620, HONORABLE GUILFORD L. JONES III, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Michael Graham sued his former employer, Rosban Construction, Inc., and its owner, Jack Bandy, (collectively "Rosban") for defamation and intentional infliction of emotional distress based on comments Bandy made when Graham's prospective employer called him for a reference. The trial court granted Rosban's traditional and no-evidence summary judgment motions. In this appeal, Graham complains that the trial court erred in granting summary judgment for Rosban. We hold that Rosban is entitled to immunity under section 103.004 of the labor code as a matter of law. Because this is one of the grounds on which the trial court could have relied in granting summary judgment for Rosban, we affirm the trial court's order.

## FACTUAL AND PROCEDURAL BACKGROUND

Rosban hired Graham as a truck driver in September 1999. The parties dispute the events that precipitated Graham's voluntary termination in May 2000. Graham alleges that he quit

after a "heated exchange" in which he told Bandy that he would no longer illegally haul oversized loads without a permit. According to Graham, Bandy's response was "[e]ither move it or I'll find something for you to do on the end of a shovel." Bandy testified that Rosban maintained all required permits and that Graham never complained about hauling oversized loads without a permit. Rosban contends that Graham quit on the morning Bandy's former partner, Carl Ross, told Graham that he had to take a random drug test pursuant to state mandate. Bandy testified as follows:

> Q. What exactly is it that you can recall of that conversation with Mr. Ross regarding him telling Mr. Graham about the random drug test?
>
> A. We were—we were at the Roadrunner Chevron. Mike pulled in. We were standing on the sidewalk in front. Mike pulled in by the sign post out by the street, and Carl took off across there. Mike . . . [was] scheduled for drug testing that morning. Carl took off across there to Mike's pickup, stayed a minute, came back. He said Mike said if he had to take a drug test he was going to quit.
>
> . . . .
>
> Q. Okay. That's what Carl Ross told you?
>
> A. Yes.
>
> Q. After he walked away from Mr. Graham's truck?
>
> A. He said, "What do you want to do?" I said, "Tell him to get his ass gone."
>
> . . . .
>
> Q. After you had that conversation with him, what did Mr. Ross do, if anything?
>
> A. He went back to Mike's pickup and told him what I said.
>
> Q. And then what happened?

2

A.    Mike turned his time card in and he was gone.

Graham asserts that Rosban never offered—and he never refused—a drug test.[1]  The parties agree that in May 2000, Graham turned in his time card and voluntarily terminated his employment with Rosban.

Graham subsequently obtained two jobs, but after leaving the second in January 2002, he remained unemployed for thirteen months.  In January or February 2003, Graham applied for a job with Tri-Mac, and a Tri-Mac representative contacted Bandy for a reference.[2]  Bandy testified that he recalled that conversation as follows:

A.    She asked me what kind of driver was Michael Graham.  I said he was a good driver.

Q.    Okay.

A.    And she said, "Why was he terminated, then?"  And I said, "He wasn't terminated.  He chose to quit."  And she said, "Why did he quit?"  And I said, "I don't really know.  We had started a new drug testing policy and that morning he and [another employee] were scheduled for drug testing and Mike

---

[1]  In his first amended petition and response to Rosban's motion for summary judgment, Graham states that "[t]he defamatory statement . . . is false.  The truth is that Defendants did not offer Plaintiff a drug test and he did not refuse a drug test."  In addition, at Graham's deposition, he testified as follows:

Q.    Okay.  If you had been given a—if you had been told that you were going to take a random drug test by Mr. Bandy, you would have taken it without hesitation?

A.    One hundred percent.

[2]  Graham testified that the reason he listed Bandy as a reference was because "the state of Texas requires all commercial drivers to submit a 10-year work history."

chose to quit." And she said, "That's pretty self-explanatory." And I said, "I don't know. That's whatever you think."

After a Tri-Mac manager told Graham about this conversation he asked a friend, Randy Greenway, to pose as a prospective employer and call Bandy for a pre-employment check. Graham presented an email from Greenway stating that when he asked Bandy if Graham was eligible for rehire, Bandy said no because when the company instituted drug testing, Graham chose to quit rather than be tested.[3]

On February 13, 2004, Graham sued Rosban for defamation and intentional infliction of emotional distress. After a period of discovery, Rosban filed both traditional and no-evidence motions for summary judgment. Rosban's traditional summary judgment motion argued that: (1) Bandy's statements were privileged because Graham provided Bandy as a reference and thus consented to their publication, (2) Rosban is immune from civil liability for defamation for Bandy's statements under section 103.004 of the labor code, (3) Bandy's statements were not defamatory as a matter of law, and (4) Graham did not file suit within the limitations period or exercise diligence in serving Rosban. Rosban's no-evidence motion argued that Graham had presented no evidence of: (1) intentional infliction of emotional distress, (2) special damages, and (3) malice sufficient to support an award of punitive damages. The trial court granted Rosban's motions without specifying the grounds upon which it relied.[4] Graham perfected this appeal. Graham argues that the trial court

---

[3] Bandy asserts that he does not recall any conversation with Greenway.

[4] The trial court's order stated that it "hereby grants Defendants' Traditional Motion for Summary Judgment and hereby grants Defendants' No Evidence Motion for Summary Judgment except as to the due diligence in serving."

4

erred in granting Rosban's traditional summary judgment motion because: (1) Rosban's statements were not subject to the common-law consent privilege for defamation suits, (2) Rosban does not have immunity under section 103.004 of the Labor Code, and (3) Rosban's statements were defamatory as a matter of law. Graham argues that the trial court erred in granting Rosban's no-evidence motion for summary judgment because Graham presented more than a scintilla of evidence of malice to support his claim for punitive damages.[5]

## STANDARDS OF REVIEW

A traditional motion for summary judgment is properly granted when the movant establishes that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Browning v. Prostok*, 165 S.W.3d 336, 344 (Tex. 2005); *Holmstrom v. Lee*, 26 S.W.3d 526, 530 (Tex. App.—Austin 2000, no pet.). Summary judgment based on an affirmative defense, such as qualified immunity, is proper if the movant establishes all of the elements of the defense as a matter of law. *Montgomery v. Kennedy*, 669 S.W.2d 309, 310-11 (Tex. 1984); *Newman v. Kock*, 274 S.W.3d 697, 704 (Tex. App.—San Antonio 2008, no pet.). In our de novo review of a trial court's summary judgment, we consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the

---

[5] Graham has not challenged on appeal the trial court's dismissal of his claim for intentional infliction of emotional distress.

summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007).

A party seeking a no-evidence summary judgment, on the other hand, does not bear the burden of establishing its right to judgment by proving a claim, but instead asserts that there is no evidence of one or more essential elements of a claim on which the opposing party will have the burden of proof at trial. Tex. R. Civ. P. 166a(i); *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008) (per curiam). If the nonmovant fails to produce more than a scintilla of probative evidence raising a genuine issue of material fact as to each challenged element on which he has the burden of proof, summary judgment is proper. *King Ranch Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). We review the evidence in the light most favorable to the nonmovant and disregard all contrary evidence and inferences unless a reasonable fact finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005).

When a trial court's order granting summary judgment does not specify the grounds relied upon, we may affirm if any of the summary judgment grounds are meritorious. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).

## DISCUSSION

To maintain a defamation cause of action, the plaintiff must prove that the defendant: (1) published a statement; (2) that was defamatory concerning the plaintiff; (3) while acting with either actual malice, if the plaintiff was a public official or public figure, or negligence, if the plaintiff was a private individual, regarding the truth of the statement. *See Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989) (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80

6

(1964)).  To prevail on its motion for summary judgment, a defendant must disprove at least one essential element of the plaintiff's defamation claim or establish all of the elements of an affirmative defense as a matter of law.  *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998); *Montgomery*, 669 S.W.2d at 310-11.

Because it is dispositive, the first ground of Rosban's traditional summary judgment motion that we consider is the affirmative defense of immunity from Graham's defamation claim under the labor code.  "An employer may disclose information about a current or former employee's job performance to a prospective employer of the current or former employee on the request of the prospective employer or the employee."  Tex. Lab. Code Ann. § 103.003 (West 2006).  "Job performance" is defined as "the manner in which an employee performs a position of employment and includes an analysis of the employee's attendance at work, attitudes, effort, knowledge, behaviors, and skills."  *Id*. § 103.002(3).  Employers are immune from civil liability for making disclosures about current or former employees' job performance:

> An employer who discloses information about a current or former employee under Section 103.003 is immune from civil liability for that disclosure or any damages proximately caused by that disclosure unless it is proven by clear and convincing evidence that the information disclosed was known by that employer to be false at the time the disclosure was made or that the disclosure was made with malice or in reckless disregard for the truth or falsity of the information disclosed.  For purposes of this subsection, "known" means actual knowledge based on information relating to the employee, including any information maintained in a file by the employer or that employee.

*Id*. § 103.004(a).

7

Graham contends that Rosban is not entitled to the protection of section 103.004 because Bandy's statement to Tri-Mac did not pertain to Graham's job performance and because Rosban did not conclusively establish that Bandy's statement was made without malice. We will address each of these arguments in turn. We hold that Bandy's statement to the Tri-Mac representative that Graham quit after he was told that he would have to take a drug test falls within the definition of "job performance" set out in section 103.002(3). Refusal to participate in a drug test in accordance with company policy and state mandate is easily considered part of "an analysis of [Graham's] attendance at work, attitudes, effort, knowledge, behaviors, and skills." *See* Tex. Lab. Code § 103.002(3);[6] *Free v. American Home Assurance Co.*, 902 S.W.2d 51, 56 (Tex. App.—Houston [1st Dist.] 1995, no writ) (holding that "there is no dispute" that supervisor's statement regarding why former employee was fired "concerned [employee's] performance of his duties . . . and his compliance with [employer] policies").

Graham also argues that Rosban did not conclusively establish that Bandy's statement was made without malice. When a defendant seeks summary judgment based on qualified privilege, it is the defendant's burden to conclusively establish that his allegedly defamatory statement was made with an absence of actual malice. *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 646

---

[6] In the only case to date construing section 103.002, the United States District Court for the Northern District of Texas held that there was a material fact issue as to whether an employer's statement regarding a former employee related to the employee's job performance. *Keeley v. Cisco Sys.*, No. 3:01-CV-1504-D, 2003 U.S. Dist. LEXIS 13944, at *37 (N.D. Tex. Aug. 8, 2003). In response to the inquiry of a prospective employer, the employee's former supervisor left a voice message stating that due to company policy he could not provide a reference, but that there were "a lot of fish in the sea." *Id*. at *7. Bandy's statement regarding Graham's refusal to take a drug test and subsequent voluntary termination much more clearly relates to his job performance.

(Tex. 1995). In the defamation context, a statement is made with actual malice when it is made with knowledge of its falsity or with reckless disregard as to its truth. *Id.* at 646. Reckless disregard exists when "the defendant in fact entertained serious doubts as to the truth of his publication" or had a "high degree of awareness of . . . [the] probable falsity of his statements." *Bentley v. Bunton*, 94 S.W.3d 561, 591 (Tex. 2002) (quoting *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989)). Actual malice with regard to a defamatory statement involves a higher level of culpability than mere ill will or animosity. *Akin v. Santa Clara Land Co.*, 34 S.W.3d 334, 341 (Tex. App.—San Antonio 2000, pet. denied). Negligence, failure to investigate the truth or falsity of the statements prior to publication, or failure to act as a reasonable prudent person is insufficient. *Id*. at 341-42.

Graham points to two statements allegedly made by Bandy on the day Graham voluntarily terminated his employment as evidence of malice. Graham testified that when he refused to continue hauling oversized loads without a permit Bandy responded: "Either move it or I'll find something for you to do on the end of a shovel." Bandy testified that when his ex-partner told him that Graham threatened to quit if he was required to take a drug test, he responded: "Tell him to get his ass gone." Bandy made these statements in May 2000. These statements constitute no evidence of actual malice for two reasons. First, these statements are not indicative of Bandy's state of mind in February 2003 when he communicated with the Tri-Mac representative. If they reveal anything with respect to Bandy's state of mind, it is his state of mind almost three years before he made the statement that is the subject of this suit. Second, these statements constitute no evidence of Bandy's belief as to the truth or falsity of his statement to Tri-Mac. The only evidence on this point is

9

Bandy's affidavit, in which he stated that he made his statement to the Tri-Mac representative because he "believed it to be true, and [he] acted in good faith." Rosban also presented deposition testimony in which Bandy testified that Ross told him that Graham said that if he had to take a drug test, he would quit, and that Graham subsequently turned in his time card. This evidence is sufficient to conclusively establish that Bandy's statements were made without malice or reckless disregard for their truth or falsity. *See New Times, Inc. v. Issacks*, 146 S.W.3d 144, 164 (Tex. 2004) (affidavits from interested witnesses may negate actual malice as a matter of law if they are "clear, positive, and direct, otherwise credible and free from contradictions and inconsistencies, and [able to be] readily controverted. Tex. R. Civ. P. 166a(c)").

Because this ground alone is sufficient to support summary judgment, *see FM Props. Operating Co.*, 22 S.W.3d at 872, we need not reach Graham's contentions regarding the other grounds in Rosban's traditional summary judgment motion. *See* Tex. R. App. P. 47.1. The only ground of Rosban's no-evidence summary judgment motion that Graham pursues on appeal is Rosban's argument that Graham presented no evidence of malice to support his claim for punitive damages. *See Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369, 375 (Tex. 1984) (in order to recover punitive damages for defamation, a plaintiff must present clear and convincing evidence of malice). Because Rosban's affirmative defense of immunity under the labor code negates Graham's defamation claim, the trial court properly granted Rosban's no-evidence motion for summary judgment as to Graham's claim for punitive damages.

## CONCLUSION

We affirm the trial court's order granting summary judgment.

10

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Waldrop and Henson

Affirmed

Filed:   October 14, 2009

11